2023-2135

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**CARBON ACTIVATED TIANJIN CO., LTD.,
CARBON ACTIVATED CORPORATION,**

**Plaintiffs-Appellants,**

**DATONG JUQIANG ACTIVATED CARBON CO., LTD., SHANXI INDUSTRY TECHNOLOGY TRADING CO., LTD., DATONG MUNICIPAL YUNGUANG ACTIVATED CARBON CO., LTD., BEIJING PACIFIC ACTIVATED CARBON PRODUCTS CO., LTD.,**

**Plaintiffs,**

**v.**

**UNITED STATES, CALGON CARBON CORPORATION, CABOT NORIT AMERICAS, INC.,**

**Defendants-Appellees.**

---

**Appeal from the United States Court of International Trade in Case No. 1:21-cv-00131-MAB, Chief Judge Mark A. Barnett**

---

**BRIEF OF DEFENDANTS-APPELLEES CALGON CARBON CORPORATION AND NORIT AMERICAS, INC.**

---

**JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
JACOB M. REISKIN
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400**

**Counsel to Defendants-Appellees**

**January 22, 2024**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

|  |  |
|---|---|
| **Case Number** | 2023-2135 |
| **Short Case Caption** | Carbon Activated Tianjin Co., Ltd. v. United States |
| **Filing Party/Entity** | Defendants-Appellees Calgon Carbon Corporation and Norit Americas, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/22/2024

Signature: /s/ John M. Herrmann

Name: John M. Herrmann

**FORM 9. Certificate of Interest**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Calgon Carbon Corporation and Norit Americas, Inc. | N/A | Calgon Carbon Corporation is a wholly-owned subsidiary of Kuraray Co., Ltd. which announced the acquisition of Calgon Carbon on 3/9/2018. In December 2021, Cabot Corporation agreed to sell its activated carbon operations to One Equity Partners. That transaction was completed in March 2022. |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐ Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

---

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Julia Kuelzow | Kelley Drye & Warren LLP | 3050 K Street NW, Washington, DC 20007 |
| | | |
| | | |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# Table of Contents

**Page**

INTRODUCTION .................................................................................1

STATEMENT OF RELATED CASES ...................................................2

STATEMENT OF THE CASE................................................................2

I.    STATEMENT OF FACTS ............................................................3

    A.    Procedures Specific to an Administrative Review Involving Merchandise From a Non-Market Economy Country ....................................................................................3

    B.    Initiation of the 12th Administrative Review and the Department's Fact-Gathering Process....................................4

    C.    The Department's Preliminary Results ................................8

    D.    Case Briefing and the Department's Final Results .............9

    E.    Carbon Activated I and the Department's Remand Results ..............................................................................12

    F.    Carbon Activated II and the Instant Appeal......................16

SUMMARY OF THE ARGUMENT ....................................................16

ARGUMENT ......................................................................................19

I.    STANDARD OF REVIEW........................................................19

II.    THE DEPARTMENT'S SURROGATE VALUE SELECTION FOR CARBONIZED MATERIALS IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE IN ACCORDANCE WITH LAW ..................................................21

    A.    Appellants' Argument Misconstrues the Remand Results ................22

    B.    The Remand Results Are Consistent With Past Agency Practice and Appellants Fail to Demonstrate a Deviation Is Warranted .........................................................................26

i

Table of Contents
(continued)

C.    The Department's Determination That Wood-Based Charcoal and Coal-Based Charcoal Have Different Activation Processes Is Supported By Substantial Evidence ............................................................................. 33

CONCLUSION ....................................................................................... 37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Carbon Activated Tianjin Co. v. United States*,
   586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022) ("*Carbon Activated I*") .........*passim*

*Carbon Activated Tianjin Co., Ltd., v. United States*,
   633 F. Supp. 3d 1329 (Ct. Int'l Trade 2023) ("*Carbon Activated II*") ...............................................................................*passim*

*Carbon Activated Tianjin Co. v. United States*,
   No. 2022-1298, 2023 U.S. App. LEXIS 10,525 (Fed. Cir. May 1, 2023) ("*CAFC AR11 Opinion*") ....................................................31, 33

*Cleo Inc. v. United States*,
   501 F.3d 1291 (Fed. Cir. 2007) .........................................................20

*CP Kelco US, Inc. v. United States*,
   949 F.3d 1348 (Fed. Cir. 2020) .........................................................32

*Downhole Pipe & Equip., L.P. v. United States*,
   776 F.3d 1369 (Fed. Cir. 2015) ............................................. 20-21, 33

*Global Commodity Group LLC v. United States*,
   709 F.3d 1134 (Fed. Cir. 2013) .........................................................19

*Hyundai Elec. & Energy Sys. Co. v. United States*,
   578 F. Supp. 3d 1245 (Ct. Int'l Trade 2022) ....................................31

*Jiaxing Brother Fastener Co. v. United States*,
   822 F.3d 1289 (Fed. Cir. 2016) .........................................................32

*Juancheng Kangtai Chem. Co. v. United States*,
   Ct. No. 14-00056, Slip Op. 15-93, 2015 Ct. Intl. Trade LEXIS 94
   (Aug 21, 2015) ...................................................................................30

*Matsushita Elec. Indus. Co. v. United States*,
   750 F.2d 927 (Fed. Cir. 1984) .....................................................20, 21

*Nan Ya Plastics Corp. Ltd. v. United States,*
 810 F.3d 1333 (Fed. Cir. 2016) ....................................................30, 32

*Nippon Steel Corp. v. United States,*
 458 F.3d 1345 (Fed. Cir. 2006) ....................................................20, 21

*NMB Sing. Ltd v. United States,*
 557 F.3d 1316 (Fed. Cir. 2009) ..........................................................24

*Seah Steel Vina Corp. v. United States,*
 950 F.3d 833 (Fed. Cir. 2020) .............................................................31

*SolarWorld Ams., Inc. v. United States,*
 910 F.3d 1216 (Fed. Cir. 2018) ...........................................................20

*Suramerica de Aleanciones Laminadas C.A. v. United States,*
 44 F.3d 978 (Fed. Cir. 1994) ........................................................ 19-20

*Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States,*
 No. 21-00565, 2023 Ct. Intl. Trade LEXIS 169 (Nov. 27, 2023) .....................36

*U.S. Steel Group v. United States,*
 96 F.3d 1352 (Fed. Cir. 1996) .............................................................21

*Universal Camera Corp. v. NLRB,*
 340 U.S. 474 (1951).........................................................................20

*Wheatland Tube Co. v. United States,*
 161 F.3d 1365 (Fed. Cir. 1998) ...........................................................35

*Zhejiang DunAn Hetian Metal Co. v. United States,*
 652 F.3d 1333 (Fed. Cir. 2011) ....................................................21, 33

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i).........................................................19, 20

19 U.S.C. § 1675 ...............................................................................3

19 U.S.C. § 1677b(c) ......................................................................4, 5

19 U.S.C. § 1677b(c)(1)(B) ................................................................4

iv

# Administrative Determinations

*Activated Carbon from China*,
    USITC Pub. 3913 (Final) (Apr. 2007)........................................................*passim*

*Activated Carbon from China*,
    USITC Pub. 4797 (2nd Rev.) (June 2018) .................................................*passim*

*Certain Activated Carbon From the People's Republic of China:*
    *Final Results of Antidumping Duty Administrative Review, Final*
    *Determination of No Shipments, and Final Rescission of*
    *Administrative Review, in Part; 2018–2019*, 86 Fed. Reg. 10,539
    (Dep't Commerce Feb. 22, 2021) ("*Final Results*"), and
    accompanying *Issues and Decision Memorandum for the Final*
    *Results of the Twelfth Antidumping Duty Administrative Review*
    (Feb. 12, 2021) ("*IDM*")............................................................................*passim*

*Certain Activated Carbon from the People's Republic of China:*
    *Final Results and Partial Rescission of Third Antidumping Duty*
    *Administrative Review*, 76 Fed. Reg. 67,142 (Dep't Commerce
    Oct. 31, 2011), and accompanying *Certain Activated Carbon from*
    *the People's Republic of China: Issues and Decision Memorandum*
    *for the Final Results of the Third Antidumping Duty Administrative*
    *Review* (Oct. 24, 2011), *aff'd, Albemarle Corp. v. United States*,
    27 F. Supp. 3d 1336 (Ct. Int'l Trade 2014), *aff'd in part, rev'd in*
    *part on other grounds*, 821 F.3d 1345 (Fed. Cir. 2016)....................................27

*Certain Activated Carbon from the People's Republic of China:*
    *Final Results of Antidumping Duty Administrative Review;*
    *2011-2012*, 78 Fed. Reg. 70,533 (Dep't Commerce Nov. 26, 2013),
    and accompanying *Certain Activated Carbon from the People's*
    *Republic of China: Issues and Decision Memorandum for the*
    *Final Results of the Fifth Antidumping Duty Administrative Review*
    (Nov. 20, 2013)...............................................................................................28

*Certain Activated Carbon From the People's Republic of China:
Final Results of Antidumping Duty Administrative Review;
2014–2015*, 81 Fed. Reg. 62,088 (Dep't Commerce Sept. 8, 2016),
and accompanying *Certain Activated Carbon from the People's
Republic of China: Issues and Decision Memorandum for the
Final Results of the Eighth Antidumping Duty Administrative
Review* (Dep't Commerce Aug. 31, 2016) ........................................................29

*Certain Activated Carbon From the People's Republic of China:
Final Results of Antidumping Duty Administrative Review;
2015–2016*, 82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017),
and accompanying *Certain Activated Carbon from the People's
Republic of China: Issues and Decision Memorandum for the
Final Results of the Ninth Antidumping Duty Administrative
Review* (Dep't Commerce Nov. 1, 2017)............................................................29

*Certain Activated Carbon From the People's Republic of China:
Final Results of Antidumping Duty Administrative Review;
2016–2017*, 83 Fed. Reg. 53,214 (Dep't Commerce Oct. 22, 2018),
and accompanying *Certain Activated Carbon from the People's
Republic of China: Issues and Decision Memorandum for the
Final Results of the Tenth Antidumping Duty Administrative
Review* (Dep't Commerce Oct. 16, 2018)............................................................29

*Certain Activated Carbon From the People's Republic of China:
Final Results of Antidumping Duty Administrative Review;
2017–2018*, 84 Fed. Reg. 68,881 (Dep't Commerce Dec. 17,
2019), and accompanying *Certain Activated Carbon from the
People's Republic of China: Issues and Decision Memorandum for
the Final Results of the Eleventh Antidumping Duty Administrative
Review* (Dep't Commerce Dec. 11, 2019)............................................................29

*Certain Activated Carbon From the People's Republic of China:
Preliminary Results of Antidumping Duty Administrative Review,
Intent To Rescind the Review, in Part, and Preliminary
Determination of No Shipments; 2018-2019*, 85 Fed. Reg. 23,947
(Dep't Commerce Apr. 30, 2020) ("*Preliminary Results*"), and
accompanying *Decision Memorandum for the Preliminary Results
of Antidumping Duty Administrative Review: Certain Activated
Carbon from the People's Republic of China; 2018-2019*...................................8

*Draft Results of Redetermination Pursuant to Court Remand,*
    *Carbon Activated Tianjin Co. v. United States*, CIT Consol. Ct.
    No. 21-00131 (Dep't Commerce Sept. 29, 2022) ("*Draft Results*") ................13

*Final Results of Redetermination Pursuant to Court Remand,*
    *Carbon Activated Tianjin Co. v. United States*, CIT Consol. Ct.
    No. 21-00131 (Dep't Commerce Nov. 17, 2022) ("*Remand
    Results*")....................................................................................*passim*

*Final Results Of Redetermination Pursuant To Court Remand,*
    *Hebei Foreign Trade and Advertising Corp. v. United States*,
    Consol. Ct. No. 09-00524 (Dep't Commerce July 26, 2011), *aff'd,
    Hebei Foreign Trade & Adver. Group v. United States*, 807 F.
    Supp. 2d 1317 (Ct. Intl Trade 2011)...........................................11, 27

*Initiation of Antidumping and Countervailing Duty Administrative
    Reviews*, 84 Fed. Reg. 27,587 (Dep't Commerce June 13, 2019)................... 4-5

## **INTRODUCTION**

Defendants-Appellees Calgon Carbon Corporation and Norit Americas, Inc. (hereinafter, "Defendants-Appellees" or "Petitioners") submit this brief in response to the opening brief submitted on behalf of Plaintiffs-Appellants Carbon Activated Tianjin Co., Ltd. and Carbon Activated Corporation (hereinafter "Carbon Activated" or "Respondents").  Carbon Activated challenges certain aspects of the U.S. Department of Commerce's (hereinafter, "the Department") final results in the 12th administrative review of the antidumping duty order on certain activated carbon from the People's Republic of China ("China").  The Department's review analyzed imports of subject merchandise that entered the United States between April 1, 2018 and March 31, 2019.  *See Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Rescission of Administrative Review, in Part; 2018–2019*, 86 Fed. Reg. 10,539 (Dep't Commerce Feb. 22, 2021) (hereinafter, "*Final Results*") (Appx1066-69), and accompanying *Issues and Decision Memorandum for the Final Results of the Twelfth Antidumping Duty Administrative Review* (Feb. 12, 2021) (hereinafter, "*IDM*") (Appx1015-65).

Defendants-Appellees disagree with Plaintiffs-Appellants' statement of the case and facts, and statement of the standard of review. As such, Defendants-Appellees provide those statements below. *See* Fed. R. App. 28(b).

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Defendants-Appellees state that no other appeal in or from the same civil action or proceeding in the U.S. Court of International Trade was previously before the U.S. Court of Appeals for the Federal Circuit or any other appellate court, other than *Carbon Activated Tianjin Co., Ltd. v. United States*, Ct. No. 2023-2413, which the Court determined to treat as a companion case to this action. See ECF No. 16.

## STATEMENT OF THE CASE

This appeal concerns the final results of the 12th administrative review of the antidumping duty order on certain activated carbon from China, as modified by the Department's remand redetermination. *See Final Results* (Appx1066-69); *IDM* (Appx1015-65). Specifically, in August 2022, the CIT remanded the *Final Results* and instructed the Department to reconsider certain issues. *See Carbon Activated Tianjin Co. v. United States*, 586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022) (Appx1-47) (hereinafter, "*Carbon Activated I*"). The Department subsequently issued a remand redetermination consistent with the CIT's decision in *Carbon Activated I* and revised the antidumping duty rates applicable to Respondents. *See*

*Final Results of Redetermination Pursuant to Court Remand, Carbon Activated Tianjin Co. v. United States*, CIT Consol. Ct. No. 21-00131 (Dep't Commerce Nov. 17, 2022) (hereinafter, "*Remand Results*") (Appx4792-4824).  In April 2023, the CIT affirmed the Department's remand redetermination in *Carbon Activated Tianjin Co., Ltd., v. United States*, 633 F. Supp. 3d 1329 (Ct. Int'l Trade 2023) (hereinafter, "*Carbon Activated II*") (Appx48-66).  Carbon Activated now appeals from the final judgment issued by the CIT in *Carbon Activated II*.

## I.    **STATEMENT OF FACTS**

Defendants-Appellees disagree with the statement of facts as presented in Carbon Activated's opening brief and believe the following more accurately describes the case before the Court.

### A.    **Procedures Specific to an Administrative Review Involving Merchandise From a Non-Market Economy Country**

In conducting an administrative review under an antidumping order, the Department compares U.S. price to normal value to calculate a dumping margin. To do so, in conducting a review of merchandise from a market economy country, the Department examines a foreign respondent's sales in the United States and in its home market during the period of review ("POR") to determine the extent to which the U.S. sales are priced below the home market sales.  *See* 19 U.S.C. § 1675.

-3-

In proceedings involving merchandise from a country treated as a non-market economy for purposes of the U.S. antidumping laws, such as China, the statute precludes the Department from relying on the respondent's home market prices due to market distortions in the non-market economy country.  *See* 19 U.S.C. § 1677b(c).  Rather, the Department calculates the normal value for a respondent's sales of a particular product using information from a country at a level of economic development comparable to that of China to value the various factors of production consumed in manufacturing the product (*i.e.*, raw materials, labor, energy, and financial ratios).  The Department uses a surrogate value for each of the respondent's factors of production to build-up a normal value for the subject merchandise that is then compared to the prices at which a respondent sells subject merchandise in the United States.  *See* 19 U.S.C. § 1677b(c)(1)(B).

At issue in this appeal is the Department's selection of a surrogate value for one of the primary inputs, coal-based carbonized material (also referred to as "carbmat"), that Respondents consume during the manufacturing process for activated carbon.

### B.     Initiation of the 12th Administrative Review and the Department's Fact-Gathering Process

On June 13, 2019, the Department initiated the 12th administrative review of the antidumping order on certain activated carbon from China.  *See Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 27,587 (Dep't Commerce June 13, 2019) (Appx2781-2794).   Subsequently, the Department selected two Chinese producers for mandatory review: Carbon Activated Tianjin Co., Ltd ("Carbon Activated") and Datong Juqiang Activated Carbon Co., Ltd ("DJAC") (collectively, "mandatory respondents").   *See* Memorandum titled "Twelfth Antidumping Duty Administrative Review of Certain Activated Carbon from the People's Republic of China: Selection of Respondents for Individual Review" at 1 (July 1, 2019) (Appx1267-71).

Because the Department treats China as a non-market economy country under the antidumping law, the agency identified a list of six potential market economy countries to use as a source of surrogate information to value the respondents' factors of production.   *See Letter to Interested Parties re: Certain Activated Carbon from the People's Republic of China (China): Request for Comments re: (1) Economic Development, (2) Surrogate Country and (3) Surrogate Value Information* (Sept. 20, 2019) (hereinafter, "*Request for SV Comments*") (Appx1479-87); *see also* 19 U.S.C. § 1677b(c).   The Department invited interested parties to comments on the list of potential surrogate countries, the selection of a surrogate country, and the surrogate information that the Department should use to value the respondents' factors of production.   *See Request for SV Comments* (Appx1479).

On October 4, 2019, Petitioners submitted comments to the Department on surrogate country selection and urged the selection of Malaysia or Mexico as the primary surrogate country. *See Letter from Petitioners re: Administrative Review of Activated Carbon from the People's Republic of China – Petitioners' Comments on Surrogate Country Selection*, at 6 (Oct. 4, 2019) (Appx1520-35, Appx1529). The mandatory respondents submitted rebuttal comments on surrogate country selection in which they objected to the Department relying on either country, but did not explicitly identify any other country for selection as the primary surrogate country. *See generally Letter from Respondents re: DJAC's & Carbon Activated's Surrogate Country Rebuttal Comments in the Twelfth Administrative Review of Certain Activated Carbon from People's Republic of China* (Oct. 9, 2019) (Appx1532-36).

In November 2019, Petitioners submitted initial surrogate value comments and proposed Malaysian data to value the mandatory respondents' factors of production. *See 12th Administrative Review of the Antidumping Duty Order on Certain Activated Carbon from the People's Republic of China – Petitioners' Submission of Surrogate Values* (Nov. 12, 2019) (Appx1538-1678). Petitioners submitted Malaysian import data under Harmonized System ("HS") heading 4402.90.1000 (the provision for "coconut shell charcoal") to value carbonized material. *Id.* The mandatory respondents also submitted initial surrogate value

comments, which included primarily Mexican data to value the factors of production, Russian import data for valuing pitch tar, coal tar, and hydrochloric acid, and Brazilian import data for valuing carbonized material. *See First Surrogate Value Comments by DJAC and CA Tianjin in the Twelfth Administrative Review of Certain Activated Carbon from People's Republic of China, Case No. A-570-904* (Nov. 12, 2019) (Appx1680-1779). Thereafter, Petitioners and respondents submitted rebuttal comments. *See Administrative Review of Activated Carbon from the People's Republic of China – Petitioners' Rebuttal of Respondents' Surrogate Value Submission* (Nov. 18, 2019) (Appx1781-2775).

In March 2020, in advance of the preliminary results, Petitioners and Respondents submitted final surrogate value comments. Respondents' submission included Malaysian import data under HS heading 4402.90 (the provision for "Wood Charcoal (Including Shell Or Nut Charcoal), Excluding That Of Bamboo") to value its coal-based carbonized materials. *See Letter from Respondents re: Case Brief of Datong Juqiang Activated Carbon Co., Ltd., Carbon Activated Tianjin Co., Ltd. and Carbon Activated Corporation in the Administrative Review of the Antidumping Duty Order on Certain Activated Carbon from the People's Republic of China (A-570-904),* at 18 (Appx4637-4709, Appx4659). Petitioners and Respondents then submitted rebuttal comments.

### C.     The Department's *Preliminary Results*

On April 24, 2020, the Department announced its preliminary results.  *See Certain Activated Carbon From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Intent To Rescind the Review, in Part, and Preliminary Determination of No Shipments; 2018-2019*, 85 Fed. Reg. 23,947 (Dep't Commerce Apr. 30, 2020) (hereafter, "*Preliminary Results*") (Appx4627-4631), and accompanying *Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review: Certain Activated Carbon from the People's Republic of China; 2018-2019* (Appx4530-61); Memorandum from the Department re: *Twelfth Administrative Review of Certain Activated Carbon from the People's Republic of China: Surrogate Values for the Preliminary Results*, at 2 (Apr. 24, 2021) (hereafter, "*Prelim. SV Memo.*") (Appx4562-4626, Appx4569).  The Department preliminarily determined that sales of certain activated carbon in the United States were made below normal value during the period of review.  *See generally Preliminary Results*.  In assessing the potential surrogate value options on the record, the Department determined that the Malaysian import value for merchandise classified under HS subheading 4402.90.1000 ("coconut shell charcoal") was the best available information to value the coal-based carbonized material that respondents consumed in the activated carbon production process.  *See Prelim. SV Memo.* at 4 (Appx4571).

### D.    <u>Case Briefing and the Department's *Final Results*</u>

Following the Department's issuance of the *Preliminary Results*, Petitioners and Respondents submitted administrative case briefs. *See Petitioners' Case Brief* (July 20, 2020) (Appx4710-13); *Case Brief of Datong Juqiang Activated Carbon Co., Ltd., Carbon Activated Tianjin Co., Ltd. and Carbon Activated Corporation in the Administrative Review of the Antidumping Duty Order on Certain Activated Carbon from the People's Republic of China* (July 20, 2020) (hereafter, "Mandatory Respondents' Case Brief") (Appx4632-4709).

The mandatory respondents urged the Department to depart from its preliminary analysis and use import data for merchandise classified under the broader HS subheading 4402.90 (wood charcoal) to value their consumption of coal-based carbonized materials. *Id.* at 18 (Appx4659). They argued that coal-based carbonized material shares certain properties with both wood and coconut shell charcoal, and acknowledged that the products "also differ with respect to a few other properties." *Id.* They further claimed that cost differences between the two potential surrogate sources, wood charcoal and coconut charcoal, supported their argument that wood charcoal is the better choice because wood charcoal prices overlapped with certain low-priced coal charcoal price data, whereas coconut charcoal prices overlapped with certain high-priced coal charcoal data. *Id.* at 18, 20 (Appx4659, Appx4661).

The mandatory respondents next claimed that a report issued by the U.S. International Trade Commission ("ITC") supports use of the broader HS subheading value carbonized materials because the report contains evidence that coconut-shell-based activated carbon has certain physical differences from coal-based charcoal. *See* Mandatory Respondents' Case Brief at 19 (Appx4660) (citing Appx3268-3269, Appx3275-3276 (hereafter, "ITC Report")). The mandatory respondents, however, then proceeded to claim that "coal based charcoal is no more closer to coconut shell charcoal than it is to wood," because of acknowledged differences between coal charcoal and wood charcoal. *Id.* at 19-20 (Appx4600-01). The mandatory respondents characterized previous administrative reviews conducted by the Department as not using a "rigid surrogate value source" to value carbonized materials and claimed that in at least one past review the Department accepted in theory "that wood based charcoal also could be used to produce certain types of activated carbon." *Id.* at 21-22 (Appx4662-63). Alternatively, mandatory respondents suggested the Department could use a weighted-average of data under the two subheadings rather than rely solely on the value for coconut-shell charcoal. *Id.* at 21-24 (Appx4662-65).

In rebuttal, Petitioners underscored that mandatory respondents previously never argued that coal-based carbonized material shared similarities with wood-based charcoal, and that their argument related to the "discovery" that wood

charcoal is cheaper than coconut-shell charcoal.  *See Petitioners' Rebuttal Brief* at 22 (Aug. 7, 2020) (Appx6204-6268, Appx6231).  Petitioners explained that the CIT previously affirmed the Department's reliance on coconut-shell charcoal to value coal-based carbonized material in prior administrative reviews.  *See id.* at 23-29 (Appx6232-38) (citing *Albemarle Corp. v. United States*, 27 F. Supp. 3d 1336, 1351 (Ct. Int'l Trade 2014) (third administrative review), *aff'd in part, rev'd in part on other grounds*, 821 F.3d 1345 (Fed. Cir. 2016); *Final Results Of Redetermination Pursuant To Court Remand; Hebei Foreign Trade and Advertising Corp. v. United States*, Consol. Ct. No. 09-00524 (Dep't Commerce July 26, 2011) at 10-11 (first administrative review), *aff'd, Hebei Foreign Trade & Adver. Group v. United States*, 807 F. Supp. 2d 1317 (Ct. Intl Trade 2011)).  Petitioners also showed that respondents' claim that coconut-shell charcoal data overlapped only with high value coal charcoal was contrary to record evidence.  *See id.* at 23 (Appx6232).  Moreover, the Department previously determined that using wood charcoal data to value carbonized material would be appropriate only if the foreign producer sold subject merchandise produced from wood charcoal, which was not the case here.  *See id.* at 29 (Appx6238); *see also IDM* at 42 (Appx4765).

In the *Final Results*, the Department continued to use Malaysian import data for merchandise classified under HS subheading 4402.90.1000 ("coconut shell

charcoal") to value carbonized material consumption. *See IDM* at 41-43 (Appx4764-66). The Department determined that carbonized material inputs are not interchangeable and that no evidence suggested that respondents used wood, nuts, or any other non-coal charcoal in the manufacture of subject merchandise. *Id.* The Department concluded that information for merchandise classified under HS subheading 4402.90.1000 continued to be the most appropriate surrogate value because no record evidence supported the inclusion of "other wood charcoal," and agency practice going back to the fifth administrative review supported its approach in this segment. *Id.*

### E.    *Carbon Activated I* **and the Department's** *Remand Results*

In March 2021, respondents appealed several aspects of the *Final Results* to the CIT, including the Department's selection of surrogate information used to value carbonized material. *See Docket Sheet*, CIT Consol. Ct. No. 21-00131 (Apr. 16, 2021) (Appx69-81). The CIT issued an initial opinion in August 2022, remanding (among other issues) the Department's surrogate value selection for carbonized material "for further explanation or reconsideration." *See generally Carbon Activated I* at 34 (Appx34). The CIT found that although the Department concluded that the mandatory respondents did not consume wood-based charcoal, the agency also did not find that the mandatory respondents consumed coconut shell charcoal. *Id.* at 35 (Appx35). The court also determined that the

-12-

Department's reliance on its findings in the fifth administrative review was unavailing because the Department did not explain the relevance to the underlying review. *Id.* Finally, the court explained that:

> Commerce is within its discretion to choose among imperfect datasets; however, Commerce's decision-making must take into account the facts on the record and reflect a well-reasoned application of its methodology to the situation . . . . Here, Commerce has failed to explain its choice between two imperfect datasets and the court remands that selection for further explanation or reconsideration.

*Id.* at 35-36 (internal citations omitted) (Appx35-36).

In September 2022, the Department issued draft remand results and modified its surrogate value selection for carbonized material, instead relying on the Malaysian import value for merchandise classified under HS subheading 4402.90 (the provision for "Wood Charcoal (Including Shell Or Nut Charcoal), Excluding That Of Bamboo"). *See Draft Results of Redetermination Pursuant to Court Remand* at 3 (hereafter, "*Draft Results*") (Appx4899). In the *Draft Results*, the Department noted that the record contained no evidence that the mandatory respondents used coconut shell charcoal in the production of subject merchandise during the period of review. *Id.* at 4 (Appx4900). The Department also stated that the record did not demonstrate that the subject merchandise is more similar to wood-based charcoal or coconut shell charcoal. *Id.* at 5 (Appx4901). The

Department concluded that the wood charcoal basket category, HS subheading 4402.90, would be more appropriate for use in valuing carbonized materials. *Id.*

In comments on the *Draft Results,* Petitioners argued the Department should continue to rely on the coconut-shell charcoal import value for several reasons. *Petitioners' Comments on Draft Remand Redetermination* (Oct. 6, 2022) (Appx6271-82). First, the Department relied on the value of coconut-shell charcoal in numerous past reviews as the surrogate value for carbonized materials, based on a determination that it was the most accurate data source. *Id.* (Appx6272-78). In addition, Petitioners argued the Department had rejected using information on the value of merchandise classified in basket categories in prior segments because including charcoals other than coconut charcoal resulted in a less accurate surrogate value for carbonized materials. Appx6277. Second, in prior administrative reviews, the Chinese respondents advocated for the use of surrogate information pertaining to coconut-shell charcoal to value coal-based carbonized materials, and claimed wood charcoal was typically chemically activated, whereas coal charcoal and coconut charcoal are typically steam activated. Appx6277-78; *see also Final Results* at 13 (Appx4808). Third, Petitioners argued that the Department's use of a wood-based charcoal surrogate value source would be inappropriate because that value "subsumes significant quantities of lower quality, lower value charcoals, is less input-specific and, thus, far less accurate than the

value of coconut shell-based charcoal classified under HS subheading 4402.90.1000." Appx6278; *see also Final Results* at 13 (Appx4808).

Thereafter, the Department issued the *Remand Results* and, consistent with the *Final Results*, determined that information on merchandise classified under HS subheading 4402.90.1000 was the best surrogate source to value carbonized material. *See Remand Results* at 14-15 (Appx4809-10). In support of that choice, the Department explained that because the record did not indicate whether Carbon Activated actually consumed wood-based or coconut shell-based charcoal in this segment, it was reasonable to look to the Department's past practice of relying on coconut shell charcoal as the surrogate value for coal-based carbonized material. *Id.* at 4-5 (Appx4799-80). Coconut shell charcoal shares many similarities with coal-based charcoal and the ITC Report on the record shows that coal-based charcoal and coconut shell charcoal are typically steam activated, whereas wood charcoal is typically chemically activated – a process resulting in merchandise that is outside the scope of the underlying antidumping order. *See id.* at 5-6 (Appx4800-01). Thus, the Department concluded, information for merchandise classified under "HS 4402.90, which includes wood-based activated carbon, is not the best information to value the respondents' carbmat." *Id.* Moreover, despite the Department's past practice of relying on coconut-shell charcoal to value coal-based carbonized materials, the respondents provided *no new evidence* to support their

-15-

argument that the Department take a new approach in this review. *Id.* at 7
(Appx4802).

### F.    *Carbon Activated II* **and the Instant Appeal**

The CIT affirmed the Department's *Remand Results* in April 2023 and
determined that "Commerce explained that chemically activated carbon is
generally made using wood-based carbonized materials," even if it does not mean
that steam activated carbon can never be produced from wood-based charcoal. *See
Carbon Activated II* at 9 (Appx56). The CIT also found that the Department
properly considered past segments of the activated carbon proceeding and
reasonably concluded that Carbon Activated identified no new record information
that justified departing from past practice of relying on coconut shell charcoal to
value coal-based carbonized materials. *Id.* at 9-10 (Appx56-57). In June 2023,
Carbon Activated filed a notice of appeal at the CIT. *See Pls.' Notice of Appeal*,
CIT Consol. Ct. No. 21-00131 (June 27, 2023) (Appx5760-61).

### SUMMARY OF THE ARGUMENT

The Department's selection of Malaysian import data for merchandise
classified under HS subheading 4402.90.1000 (encompassing coconut-shell
charcoal) as the surrogate value for Respondents' consumption of coal-based
carbonized material is supported by substantial evidence and is otherwise in
accordance with law.

Appellants' argument rests on one sentence in the *Remand Results* that inadvertently states there is a "long, demonstrable history in this proceeding of using coconut-shell charcoal in the production of subject merchandise," rather than stating there is a long, demonstrable history *of using information on the value of coconut-shell charcoal as the surrogate value for carbonized materials* used in the production of subject merchandise. Indeed, the Department's understanding of the nature of the input in the underlying review, as well as numerous past reviews, is evident from its discussion of coconut-shell charcoal as a surrogate value for coal-based carbonized materials throughout the *Remand Results*. Appellants ignore the Department's analysis in its entirety, instead focusing on one phrase in a single sentence of the *Remand Results*. Moreover, the CIT's opinion affirming the *Remand Results* demonstrates that both the court and the Department understood that information on the value of coconut-shell charcoal was being used as the surrogate value for coal-based carbonized materials, and was not the actual material being consumed to produce the subject merchandise at issue in this review. When the *Remand Results* are read in their entirety, the path to the agency's decision-making is reasonably discernible and should be sustained.

Once the Department's statement is understood in context, the Department's reliance on the value of coconut-shell charcoal as the surrogate value for coal-based carbonized materials is wholly consistent with the agency's approach in

numerous past segments under the antidumping duty order. Indeed, in multiple past reviews, the Chinese producers argued that the Department should rely on the value of coconut-shell charcoal as the surrogate value for coal-based carbonized materials. *See Petitioners' Rebuttal Case Brief* at 22 (Appx6231). The Respondents claimed that information on coconut-shell charcoal was a better surrogate source than was information on wood-based charcoal for valuing coal-based carbonized materials. *Id.* Appellants' reversal of this long-standing position in the underlying review was accompanied by no new evidence to support such a drastic change in approach.

Both the agency's practice in prior segments of this proceeding, as well as record evidence from the U.S. International Trade Commission, demonstrate that differences between wood-based charcoal and coal-based carbonized material support the use of information relating to the value of coconut-shell charcoal as the better surrogate value. While Appellants may disagree with the Department's surrogate value selection in the underlying review, they fail to demonstrate that no reasonable mind could conclude that information concerning the value of coconut-shell charcoal is the better surrogate choice based on the record evidence.

Critically, it is respondents' burden to build the record of a proceeding. Carbon Activated had numerous opportunities, both in responses to the Department's antidumping questionnaires and during the process for submitting

surrogate value information to the Department, to submit any information it believed relevant and necessary to support its position. To the extent Carbon Activated complains to this Court that the record contains insufficient evidence regarding *its own consumption of carbonized materials for purposes of selecting a representative surrogate value*, it alone bears the responsibility for the lack of record evidence as the sole party in control of that information.

The Department selected a surrogate value consistent with its practice and knowledge from numerous past reviews, and supported that choice with record evidence. As such, its decision in the *Remand Results* should be sustained.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews Commerce's final determinations by applying anew the same standard applied by the CIT, that is prescribed in 19 U.S.C. § 1516a(b)(1)(B)(i). *See Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013). Consistent with the statute, this Court will:

> hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . .

19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence means "'more than a mere scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Suramerica de Aleanciones Laminadas C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  To qualify as substantial evidence, the administrative record "'must do more than create a suspicion of the existence of the fact to be established.'" *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006) (quoting *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).  "When performing a substantial evidence review, . . . we give great weight to the informed opinion of the {CIT}.  Indeed, it is nearly always the starting point of our analysis." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

Importantly, the court may not reweigh the evidence and assume the role of the Department as the finder of fact.  *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984); *see also SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1225 (Fed. Cir. 2018) ("SolarWorld also invites us to reweigh the evidence already considered by Commerce . . . .  However, we may not reweigh the evidence in this case.").  "'This court's duty is not to evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available

information.'" *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1379 (Fed. Cir. 2015) (quoting *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1331 (Fed. Cir. 2011)); *see also Zhejiang DunAn Hetian Metal at 1344* ("We cannot say, therefore that no reasonable mind could conclude that Commerce calculated the surrogate value as accurately as possible.").  Nor is it appropriate for the court to substitute its judgment or its interpretation of the evidence for that of the agency.  *Matsushita Elec. Indus. Co.*, 750 F.2d at 936.  The role of the court is not to question the agency's decisions about the weight or quality of the evidence.  *See U.S. Steel Group v. United States*, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence).  "Under the substantial evidence standard, when adequate evidence exists on both sides of an issue, assigning evidentiary weight falls exclusively within the authority of {the agency}."  *Nippon Steel Corp. v. United States*, 458 F.3d at 1358 (bracketed material added).

## II.    THE DEPARTMENT'S SURROGATE VALUE SELECTION FOR CARBONIZED MATERIALS IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND OTHERWISE IN ACCORDANCE WITH LAW

Plaintiffs-Appellants argue the Department erred in valuing carbonized materials using Malaysian import values for merchandise classified under HS subheading 4402.90.1000, which provides for "coconut shell charcoal."  *See* Pls.-Appellants' Br. at 15.  They contend that: (1) the Department misconstrued its

-21-

history of using coconut-shell carbonized material in the production of subject merchandise, and (2) the Department "made flawed factual findings" when it concluded that wood-based charcoal and coal-based carbonized material have different activation processes, making coconut shell charcoal prices a better surrogate value source. *See id.* at 15-16, 24.

## A.  Appellants' Argument Misconstrues the *Remand Results*

Appellants challenge the Department's finding that "{t}here is a long, demonstrable history in this proceeding of using coconut-shell carbmat in the production of the subject merchandise, unlike wood carbmat, which has never been used to produce the subject merchandise." Pls.-Appellants' Br. at 16.  Appellants then argue that "{c}ontrary to Commerce's finding, in each of the cited reviews, the mandatory respondents reported using *coal-based* carbonized materials to produce the subject merchandise, not coconut-shell carbmat." *Id.* (emphasis in original) (citing Appx4800).

Appellants' argument amounts to nothing more than revealing a syntax error in the *Remand Results*.  Appellants are correct that the *Remand Results* stated "{t}here is a long, demonstrable history in this proceeding of using coconut-shell carbmat in the production of the subject merchandise." Appx4800.  The Department's intended point, however, was that there is a long, demonstrable history in this proceeding of the Department relying on information concerning the

value of *coconut-shell charcoal as the surrogate value for carbonized materials* consumed in the production of subject merchandise. The Department's intention is clear from the remainder of the analysis in the *Remand Results* that follows the one sentence on which Appellants' argument is premised. *See Remand Results* at 5 (Appx4800). Indeed, the *Remand Results* go on to state "{m}oreover, we have demonstrated in the past, including before the CIT, that *coconut-shell carbmat shares many similarities with coal-based carbmat and is an appropriate surrogate for coal-based carbmat*." *Id.* (internal citations omitted) (emphasis added). The word "moreover" indicates that the Department's analysis was not limited to the statement conflating the surrogate value used with the input being valued. *See id.* at 5 (Appx4800).

The Department's *Remand Results* further state that record evidence regarding "the physical characteristics of wood-based, coconut-shell-based, and coal-based activated carbon does not indicate that coal-based activated carbon is more alike one or the other type of activated carbon," thereby confirming that it is assessing whether information on the value of wood-based charcoal or coconut-shell based charcoal (potential surrogate value choices) is a better source of information for valuing coal-based carbonized materials (as reportedly consumed by Carbon Activated). *Remand Results* at 6-7 (Appx4801-4802). Thus, taken as a whole, the Department's analysis is unquestionably focused on selecting

the best surrogate value (coconut-shell based charcoal versus wood-based charcoal) to value respondents' consumption of coal-based carbonized materials.

This Court has held that "the path of Commerce's decision must be reasonably discernable to a reviewing court," but the agency's explanations need not be perfect. *NMB Sing. Ltd v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009). Here, Appellants' argument is premised on one phrase in a single sentence in the *Remand Results* that inadvertently stated that "coconut-shell carbmat" is the input being valued, rather than the product that serves as the basis for valuing coal-based carbonized materials. Appx4800. However, the Department's analysis in the *Remand Results* otherwise demonstrates its understanding that coal-based carbonized material was consumed in the activated carbon production process. For example, the Department explained that "{i}n light of the CIT's Remand Order, Commerce has further explained its SV selection for coal-based carbmat. . . . and continues to find that import data reported under Malaysian HS subheading 4402.90.1000 ('coconut shell charcoal') is the best available information to value coal-based carbmat." Appx4798. The *Remand Results* further stated that "{i}n past Commerce decisions and on remand, because SV information specific to coal-based carbmat was not available, Commerce found coconut shell charcoal to be the best available information with which to value mandatory respondents' coal-based carbmat, based on the reported product specifications." Appx4800 (citations

omitted). Further, the Department's analysis on remand stated "{m}oreover, we have demonstrated in the past, including before the CIT, that coconut-shell carbmat shares many similarities with coal-based carbmat and is an appropriate surrogate for coal-based carbmat." *Id.* (citations omitted). Indeed, the CIT also understood that the input being valued was coal-based carbonized material. Appx52 ("For the *Final Results*, Commerce valued coal-based carbonized material using Malaysian import data under HS 4402.90.1000, which covers "coconut shell charcoal.") (citation omitted); Appx53 ("Commerce reversed course {from the Draft Remand} in the Remand Results, selecting HS 4402.90.1000 as the best available information to value coal-based carbonized material, as it had for the *Final Results*.") (citation omitted). Appellants ignore that the Department's analysis in the *Remand Results* as a whole demonstrates its understanding that coal-based carbonized material is the input at issue to be valued.[1]

Thus, Appellants' claim that one sentence in the *Remand Results* contains a syntax error does not undermine the entirety of the Department's findings, and the path of the agency's decision is reasonably discernable and should be affirmed.

---

[1]    One exception appears to be on page 22 of Appellants' opening brief, which cites a statement in the Draft Remand Redetermination that the record "contains no evidence that the mandatory respondents purchased or used coconut shell charcoal to produce activated carbon to the United States." Pls. Appl. Br. at 22 (citing Appx4900). This is yet another confirmation that the Department understood that the input being value was not coconut-shell carbmat, but instead coal-based carbonized material.

**B.    The *Remand Results* Are Consistent With Past Agency Practice and Appellants Fail to Demonstrate a Deviation Is Warranted**

Appellants challenge the Department's reliance its findings in prior reviews as supportive of the choice of information concerning the value of coconut-shell charcoal to value coal-based carbonized materials in the *Remand Results*.  Contrary to Appellants' assertions, the Department did not misunderstand its own precedent.  Pls.-Appellants' Br. at 16-17.  Appellants' claim, again, is premised on one phrase in a single sentence it cites in the *Remand Results* to claim the Department did not understand that the input at issue was coal-based carbonized materials.  *Id.*  In fact, the prior cases cited in the *Remand Results* confirm that the Department has selected coconut-shell charcoal repeatedly as the surrogate value for coal-based carbonized material.

As early as the first administrative review, the Department's selection of a surrogate value for carbonized materials consumed in the process of manufacturing subject merchandise was the subject of litigation.  In a remand proceeding in connection with litigation on the first administrative review, the Department explained "our re-examination of the record indicates that coconut shell charcoal shares similar properties with carbonized material and that those similar properties

are essential in the production of activated carbon."[2]   An expert report on that record demonstrated that coal-based carbonized materials consumed by the respondent and coconut shell charcoal shared similar properties that were essential in the production of activated carbon.  *Id.*; *see also Remand Results* at 5, n. 22-27 (Appx4800).

In the third administrative review, the Department relied on information concerning the value of coconut-shell charcoal as the surrogate for valuing carbonized materials and explained "coconut shell charcoal shares similar properties with carbonized material and that those similar properties are essential in the production of activated carbon."[3]

---

[2]   *Final Results of Redetermination Pursuant to Court Remand, Hebei Foreign Trade and Advertising Corp v. United States*, CIT Consol. Ct. No. 09-00524, at 10 (Dep't Commerce July 26, 2011), *aff'd, Hebei Foreign Trade and Advertising Corp. v. United States*, 807 F. Supp. 2d 1317, 1319 n.2 (Ct. Int'l Trade 2011) (cited in *Remand Results* at 5 n.25 (Appx4800)).

[3]   *Certain Activated Carbon from the People's Republic of China: Final Results and Partial Rescission of Third Antidumping Duty Administrative Review*, 76 Fed. Reg. 67,142 (Dep't Commerce Oct. 31, 2011), and accompanying *Certain Activated Carbon from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the Third Antidumping Duty Administrative Review* (Oct. 24, 2011) at Comment 4.b. (cited in *Remand Results* at 5 nn. 23-24 (Appx4800)), *aff'd, Albemarle Corp. v. United States*, 27 F. Supp. 3d 1336, 1351 (Ct. Int'l Trade 2014) (affirming the Department's continued reliance on this surrogate value in a remand redetermination) (cited in *Remand Results* at 5 n.25 (Appx4800)), *aff'd in part, rev'd in part on other grounds*, 821 F.3d 1345 (Fed. Cir. 2016).

In the fifth administrative review, the Department continued to rely on information concerning the value of coconut-shell charcoal as the surrogate for valuing carbonized materials, stating:

> In past decisions and on remand, because SV information specific to coal-based carbonized materials was not available, the Department has found coconut shell charcoal is the best available information with which to value respondents' coal-based carbonized materials, based on the product specifications.

*Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011-2012*, 78 Fed. Reg. 70,533 (Dep't Commerce Nov. 26, 2013), and accompanying *Certain Activated Carbon from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the Fifth Antidumping Duty Administrative Review* (Nov. 20, 2013) at 36 (Comment 6) (citations omitted); *Remand Results* at 5 nn.23-24 (Appx4800).

The Department again relied on coconut-shell charcoal as a surrogate value for carbonized materials in the ninth administrative review. *See Department Memorandum re: Ninth Antidumping Duty Administrative Review of Certain Activated Carbon from the People's Republic of China: Surrogate Values for the Final Results* (Nov. 1, 2017) (Appx1832-35). Thus, the Department repeatedly has relied on coconut-shell charcoal as the surrogate value for coal-based carbonized material.

-28-

Appellants fail to acknowledge that during numerous administrative reviews, respondents themselves *advocated for the Department's reliance on information concerning the value* of coconut-shell charcoal for valuing coal-based carbonized material.[4]

In response to Appellants' attempts to distinguish prior reviews, the CIT explained that while the Department's analysis in each administrative review stands on its own, "that legal truism does not prevent Commerce from acting in accord with prior reviews when the record of the present review does not contain new of additional facts warranting a departure from the agency's prior practice."

---

[4]   *See, e.g., Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2017–2018*, 84 Fed. Reg. 68,881 (Dep't Commerce Dec. 17, 2019), and accompanying *Certain Activated Carbon from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the Eleventh Antidumping Duty Administrative Review* (Dep't Commerce Dec. 11, 2019); *Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2016–2017*, 83 Fed. Reg. 53,214 (Dep't Commerce Oct. 22, 2018), and accompanying *Certain Activated Carbon from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the Tenth Antidumping Duty Administrative Review*, at 11 (Comment 3) (Dep't Commerce Oct. 16, 2018); *Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2015–2016*, 82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017), and accompanying *Certain Activated Carbon from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the Ninth Antidumping Duty Administrative Review*, at 22 (Comment 5) (Dep't Commerce Nov. 1, 2017); *Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014– 2015*, 81 Fed. Reg. 62,088 (Dep't Commerce Sept. 8, 2016), and accompanying *Certain Activated Carbon from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the Eighth Antidumping Duty Administrative Review*, at 28 (Comment 5) (Dep't Commerce Aug. 31, 2016).

*Carbon Activated II* at 10 (Appx57).  Although "{e}ach administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record," *Carbon Activated I*, 586 F. Supp. 3d at 1379 (citing *e.g., Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014)), the Department may rely on general knowledge it gains in a prior segment of a proceeding to inform its analysis in a subsequent segment.  *See, e.g., Juancheng Kangtai Chem. Co. v. United States*, Ct. No. 14-00056, Slip Op. 15-93 at 40 n.29, 2015 Ct. Intl. Trade LEXIS 94 at *62 n.29 (Aug 21, 2015) ("Final findings in prior reviews become the law of the case and 'agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.'") (quoting *Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1371 (Fed. Cir. 2011)).  Here, Respondents have provided *no new evidence* to demonstrate that the Department should have changed course in the underlying review.

It is a respondent's burden to build the record of a proceeding – a burden that Appellants have failed to carry here.  *See Nan Ya Plastics Corp. Ltd. v. United States,* 810 F.3d 1333, 1337 (Fed. Cir. 2016) ("'Although Commerce has authority to place documents in the administrative record that it deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce.'") (quoting *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324

(Fed. Cir. 2011)). Moreover, Carbon Activated is an experienced respondent that has participated in numerous proceedings before the Department and the courts.[5] *See e.g., Hyundai Elec. & Energy Sys. Co. v. United States*, 578 F. Supp. 3d 1245, 1262 (Ct. Int'l Trade 2022) (explaining that experienced respondents are aware of the antidumping duty order and the expectation to submit relevant documentation to build an adequate record). Here, Carbon Activated was the party in control of its own data, and if it believed that more information was necessary to support the surrogate value for which it advocated to value *its own* carbonized material consumption, then it should have provided that information to the Department. Carbon Activated had multiple opportunities throughout the administrative review, both in responses to the antidumping questionnaires and surrogate value

---

[5] Last year, Carbon Activated appealed the Department's selection of surrogate values for certain inputs in the eleventh administrative review to this Court. In a non-precedential opinion, the Court affirmed Commerce's findings and noted that "Appellants point to nothing suggesting that '*no reasonable mind*' could have come to the same conclusion as Commerce." *Carbon Activated Tianjin Co. v. United States*, No. 2022-1298, 2023 U.S. App. LEXIS 10,525, at *17 (Fed. Cir. May 1, 2023) (emphasis added) (quoting *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1344 (Fed. Cir. 2011) ("We cannot say, therefore that no reasonable mind could conclude that Commerce calculated the surrogate value as accurately as possible.")) (hereinafter, "*CAFC AR11 Opinion*"). Thus, Carbon Activated was fully aware of the Department's surrogate value procedures and practices, as well as the high burden on appeal that *no reasonable mind* could have come to the same conclusion that coconut shell charcoal was the best data available. *See id.*; *see also Seah Steel Vina Corp. v. United States*, 950 F.3d 833, 842-43 (Fed. Cir. 2020) ("{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.") (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

submission process, to submit any of its own information regarding the consumption of carbonized materials that it viewed as necessary or helpful to its position. *See Nan Ya Plastics,* 810 F.3d at 1337 ("The placement of the burden on interested parties stems from the fact that the International Trade Administration, the relevant agency within Commerce, has no subpoena power.") (citing *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)). To the extent that information is not on the record, Carbon Activated is at fault, not the Department.

In light of the Department's past practice, the underlying record, and respondents' own positions in prior administrative reviews, the CIT correctly held that Appellants' claims fail.[6]  Appx57 ("Commerce has supported its surrogate

---

[6]  Because Appellants misconstrue the Department's findings, their reliance on prior case law is inapposite. In *Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2016), the Court stated "Commerce is required to base surrogate country selection on the facts presented in each case, and not on grounds of perceived tradition." *Id.*  In *Jiaxing*, however, Appellants disputed the Department's *departure* from past practice, not a decision, as is this case, to select surrogate value data that is *consistent* with past practice. *Id.* at 1299-1300. Appellants cite *CP Kelco US, Inc. v. United States*, 949 F.3d 1348, 1356 (Fed. Cir. 2020), but that case supports the *Remand Results*. *See* Pls.-Appellants' Br. at 23-24.  The Court explained there that past practice is not by itself a sufficient explanation of the Department's methodology. *See id.* at 1356. On remand in *CP Kelco*, the Department also abided by what the "the Trade Court previously recognized as a past practice" when it rejected certain evidence of subsidies, and both the CIT and the CAFC affirmed. *See CP Kelco US, Inc.* at 1353, 1359. Here, the *Remand Results* are consistent with both cases, and the CIT sustained the Department's finding that Carbon Activated provided no reason or new facts that would warrant a departure from the past practice. Appx57.

value selection with substantial evidence such that a reasonable mind could find that the agency selected the best information available."); *see also CAFC AR11 Opinion*, at *17; *Zhejiang DunAn Hetian Metal Co.*, 652 F.3d at 1344. "'This court's duty is not to evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information.'" *Downhole Pipe & Equip., L.P. v. United States,* 776 F.3d 1369, 1379 (Fed. Cir. 2015) (quoting *Zhejiang DunAn Hetian Metal Co.*, 652 F.3d at 1341). Appellants refer to the "reasonable mind" test in their standard of review, but they do not apply it in their analysis. Accordingly, the Court should sustain the *Remand Results*.

### C. The Department's Determination That Wood-Based Charcoal and Coal-Based Charcoal Have Different Activation Processes Is Supported By Substantial Evidence

Appellants next challenge the Department's determination that the activation process for wood-based activated carbon is different from the activation process for coal-based activated carbon. Pls.-Appellants' Br. at 24-25. Appellants argue that Commerce should have relied on the basket HS subheading that captures imports of both coconut-shell charcoal and other wood charcoal, as opposed to the HS import data that covers only coconut-shell charcoal. *See id.* Appellants again fail to demonstrate that no reasonable mind could have reached the same conclusion as the Department. *See CAFC AR11 Opinion*, at *17.

Appellants' argument rests on what it claims is the Department's erroneous analysis of the ITC's Report in *Certain Activated Carbon from China*. *See* Pls.-Appellants' Br. at 25. Specifically, Appellants claim that the Department had no reasonable basis to conclude from the ITC's Report that "chemically activated carbon is 'generally' made using wood charcoal," because "Commerce ignored the bulk of the evidence and focused instead on a footnote in one ITC report." *Id.* at 26. The Department, however, did not disregard the ITC Report, and Appellants' reading of the Department's finding is needlessly narrow because in its *Remand Results* the Department addressed the factors that weighed for *and* against its ultimate determination. *See id.* at 24-25; *Remand Results* at 5-6 (Appx4800-01). Specifically, the Department explained that some information in the "limited portions" of the ITC Report "on the record provided by the mandatory respondents" supports the argument that coconut-shell-based activated carbon and wood-based activated carbon share some properties and some differences with coal-based activated carbon. *Remand Results* at 5-6 (Appx4800-01). The Department, nonetheless, concluded that the ITC Report supported the choice of coconut-shell activated carbon surrogate value data because the report "also states that the physical properties of activated carbon (size and shape of particles, surface area, pore-size distribution, ash content, and hardness) 'depend on the raw materials used, *as well as the activation process*.'" *Id.* at 6 (Appx4801) (quoting

-34-

the ITC's Report). Further, as previously discussed, the ITC Report stated "chemically activated carbon is generally made using wood." *See* Defendants-Appellees' (Defendant-Intervenors) Comments on Redetermination at 6 n.5 (Appx4853-67, Appx4862) (quoting the ITC's determination).

In response to Appellants' arguments, the CIT explained that "{w}hile this does not mean that steam activated carbon, the subject merchandise produced by Plaintiffs, is not or cannot be produced with wood-based charcoal, *Commerce's analysis did not stop there*." *Carbon Activated II*, 633 F. Supp. at 1335 (Appx56) (emphasis added). As explained above in Sections II.A and B, the Department weighed the information in the ITC Report and considered it in light of its practice in past reviews. *See Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998) ("An explicit explanation is not necessary, however, where the agency's decisional path is reasonably discernible.") (citing *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987)).

Finally, the Court should disregard Appellants' argument that the Department's reversal from its draft remand determination to its final remand determination demonstrates the Department acted unreasonably. *See* Pls.-Appellants' Br. at 27; *see also Remand Results* at 12 (Appx4807) ("We have revised our conclusion with respect to the carbmat SV and continue to reach the same conclusion that we reached in the Draft Remand Results."). As the CIT

-35-

framed it in a case involving a reversal between a draft and final redetermination, "the question . . . is whether Commerce sufficiently 'elucidate{d} {its} thinking,' . . . such that 'the agency's path may reasonably be discerned.'" *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, No. 21-00565, 2023 Ct. Intl. Trade LEXIS 169, at *32-33 (Nov. 27, 2023) (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) and citing *Wheatland Tube Co.*, 161 F.3d at 1369-70) (internal citation omitted). Here, the Department made clear its reasons for relying on the ITC Report and its past practice when it determined in its final remand determination that differences in the activation process supported its selection of coconut-shell carbmat surrogate value data. The Department's path to its final remand results is discernible and its remand determination should be affirmed.

## CONCLUSION

For the forgoing reasons, Defendants-Appellees respectfully request that this Court affirm the *Remand Results* and the CIT's decision in *Carbon Activated II* affirming the Department's surrogate value selection for carbonized materials.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
R. ALAN LUBERDA
MELISSA M. BREWER
JACOB M. REISKIN

KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendants-Appellees

January 22, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2135

**Short Case Caption:** Carbon Activated Tianjin Co., Ltd. v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 8,302 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/22/2024

Signature: /s/ John M. Herrmann

Name: John M. Herrmann