No. 2023-2135

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

CARBON ACTIVATED TIANJIN CO., LTD., CARBON ACTIVATED CORPORATION,

*Plaintiffs-Appellants*,

DATONG JUQIANG ACTIVATED CARBON CO., LTD., SHANXI INDUSTRY TECHNOLOGY TRADING CO., LTD., DATONG MUNICIPAL YUNGUANG ACTIVATED CARBON CO., LTD., BEIJING PACIFIC ACTIVATED CARBON PRODUCTS CO., LTD.,

*Plaintiffs*,

*v.*

UNITED STATES, CALGON CARBON CORPORATION, CABOT NORIT AMERICAS, INC.,

*Defendants-Appellees.*

On Appeal from the United States Court of International Trade,
No. 1:21-cv-00131-MAB, Chief Judge Mark A. Barnett

**REPLY BRIEF FOR PLAINTIFFS-APPELLANTS CARBON ACTIVATED TIANJIN CO., LTD. AND CARBON ACTIVATED CORPORATION**

KANZANIRA THORINGTON
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center,
250 Greenwich Street
New York, NY 10007
(212) 230-8800

DAVID J. ROSS
STEPHANIE E. HARTMANN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

*Attorneys for Plaintiffs-Appellants
Carbon Activated Tianjin Co., Ltd.
and Carbon Activated Corporation*

March 4, 2024

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants Carbon Activated Corporation and Carbon Activated Tianjin Co., Ltd. certifies the following:

**1.     Represented Entities**.  Fed. Cir. R. 47.4(a)(1).  Provide the full names of all entities represented by undersigned counsel in this case.

Carbon Activated Corporation and Carbon Activated Tianjin Co., Ltd.

**2.     Real Party in Interest**.  Fed. Cir. R. 47.4(a)(2).  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

**3.     Parent Corporations and Stockholders**.  Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.     Legal Representatives**.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

GRUNFELD DESIDERIO LEBOWITZ SILVERMAN & KLESTADT, LLP:
Dharmendra Narain Choudhary, Jordan Charles Kahn, Brandon Michael
Petelin, Francis J. Sailer, Elaine Fang Wang

**5.**     **Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☒ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6.**     **Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: March 4, 2024            /s/ David J. Ross
                                            DAVID J. ROSS
                                            WILMER CUTLER PICKERING
                                              HALE AND DORR LLP
                                            2100 Pennsylvania Avenue, NW
                                            Washington, DC 20037
                                            (202) 663-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................i

TABLE OF AUTHORITIES ................................................................iv

INTRODUCTION ................................................................1

ARGUMENT ................................................................3

I.  COMMERCE'S SELECTION OF THE SURROGATE VALUE FOR
    CARBONIZED MATERIALS IS UNSUPPORTED BY SUBSTANTIAL
    EVIDENCE AND SHOULD BE REVERSED ................................3

    A.  Defendant-Appellees do not contest that Commerce
        based its determination on an incorrect finding ....................4

    B.  Commerce's reliance on its choice of surrogate values in
        past administrative reviews was unsupported by
        substantial evidence and contrary to law .............................7

    C.  Defendant-Appellees fail to rebut that Commerce's
        reliance on the activation process used to produce
        activated carbon was unsupported by substantial
        evidence ................................................................13

CONCLUSION ................................................................20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*ABB, Inc. v. United States,*
  920 F.3d 811 (Fed. Cir. 2019) ...........................................................20

*Altcor, Inc. v. United States,*
  658 F. Supp. 295 (CIT 1987)...............................................................7

*Burlington Truck Lines, Inc. v. United States,*
  271 U.S. 156 (1962)..............................................................................7

*Carbon Activated Tianjin Co. v. United States,*
  586 F. Supp. 3d 1360 (CIT 2022).......................................................4

*Qingdao Sea-Line Trading Co., Ltd. v. United States,*
  766 F.3d 1378 (Fed. Cir. 2014) ..........................................................9

*SKF USA Inc. v. United States,*
  254 F.3d 1022 (Fed. Cir. 2001) ...................................................... 6-7

*SolarWorld Americas, Inc. v. United States,*
  962 F.3d 1351 (Fed. Cir. 2020) ........................................................11

*Stupp Corporation v. United States,*
  619 F. Supp. 3d 1314 (CIT 2023).....................................................20

*Taian Ziyang Food Co. v. United States,*
  783 F. Supp. 2d 1292 (CIT 2011)......................................................10

*U.H.F.C. Co. v. United States,*
  916 F.2d 689 (Fed. Cir. 1990) .............................................................6

*Valley Fresh Seafood, Inc. v. United States,*
  31 CIT 1989 (2007) .............................................................................20

## ADMINISTRATIVE DECISIONS

*Certain Activated Carbon From the People's Republic of China:*
  *Amended Final Results of Antiduping Duty Administrative Review,*
  74 Fed. Reg. 66,952 (Dep't Commerce Dec. 17, 2009) .......................9

*Certain Activated Carbon From the People's Republic of China:*
  *Final Results and Partial Rescission of Third Antidumping*
  *Administrative Review*, 76 Fed. Reg. 67,142 (Dep't Commerce
  Oct. 31, 2011) ................................................................................17

*Certain Activated Carbon From the People's Republic of China:*
  *Final Results of Antidumping Duty Administrative Review; 2010-*
  *2011; Final Results of Antidumping Duty Administrative Review,*
  77 Fed. Reg. 67,337 (Dep't Commerce Nov. 9, 2012)...................9, 12

*Certain Activated Carbon From the People's Republic of China:*
  *Final Results of Antidumping Duty Administrative Review; 2011-*
  *2012*, 78 Fed. Reg. 70,533 (Dep't Commerce Nov. 20, 2013) ........17

*Certain Activated Carbon From the People's Republic of China:*
  *Final Results of Antidumping Duty Administrative Review; 2015-*
  *2016*, 82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017) ...........17

## INTRODUCTION

Defendant-Appellee the United States (the "government") and Defendant-Appellees Calgon Carbon Corporation and Norit Americas, Inc. ("Calgon") (collectively, "Defendant-Appellees") fail to grapple with the critical flaw in Commerce's Final Remand Redetermination and the U.S. Court of International Trade's ("CIT") decision to sustain Commerce's determination. Commerce premised its decision to select HTS 4402.90.1000 as the surrogate value for the respondents' carbonized materials on an incorrect finding, and the CIT based its decision to affirm Commerce's determination on that incorrect finding. As Carbon Activated explained in its opening brief, this was unlawful.

Unable to deny what Commerce did, the Defendant-Appellees argue that it should not matter. But they are wrong. In light of the evidence on the record and the CIT's decision in *Carbon Activated I*, Commerce should have selected the basket category HTS 4402.90 as the surrogate value for respondents' carbonized materials. And indeed, that is exactly what Commerce did in its Draft Remand Redetermination, before it reversed itself in the Final Remand Redetermination on the basis of its incorrect finding.

The Defendant-Appellees also argue that Commerce's approach was reasonable given its practice in prior reviews. But as Carbon Activated demonstrated in its opening brief, the facts of the prior reviews are readily

distinguishable from those of the current review. Moreover, as Carbon Activated also demonstrated in its opening brief, Commerce mischaracterized its past practice in relying on its prior reviews. And while Defendant-Appellees claim that the respondents should have placed additional evidence on the record to support Commerce's use of the basket category HTS 4402.90 as the surrogate value for respondents' carbonized materials, they have it backwards. Given the facts on the record of this review and the CIT's decision in *Carbon Activated I*, Commerce's selection of HTS 4402.90.1000 (coconut shell charcoal) was unsupported by substantial evidence. If petitioners preferred a different outcome, it was incumbent upon them—not the respondents—to submit the requisite evidence.

In addition, Defendant-Appellees fail to rebut that Commerce unlawfully ignored relevant record evidence to support its selection of HTS 4402.90.1000 (coconut shell charcoal). Commerce rejected the basket category HTS 4402.90 based on its inaccurate generalization that wood charcoal undergoes chemical activation, distinct from the coal-based carbmat used by mandatory respondents which undergoes steam activation. The CIT recognized that Commerce's reasoning was flawed. Moreover, Commerce failed to address that both the U.S. International Trade Commission ("ITC") reports and the scope of the order demonstrate that respondents' steam-activated carbon can be produced with wood-based charcoal.

In sum, Commerce's selection of HTS 4402.90.1000 is based on inaccurate factual findings and a mischaracterization of the history of the proceeding and record evidence. The CIT erred in relying on Commerce's unsupported findings to sustain Commerce's Final Remand Redetermination. Therefore, Carbon Activated respectfully requests that this Court reverse the CIT decision affirming Commerce's surrogate value selection for carbonized materials and remand to Commerce for reconsideration of the surrogate value for carbonized materials.

## ARGUMENT

### I.    COMMERCE'S SELECTION OF THE SURROGATE VALUE FOR CARBONIZED MATERIALS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND SHOULD BE REVERSED

In its Final Remand Redetermination, Commerce reversed the decision it had made in its Draft Remand Redetermination and selected Malaysian import prices under HTS 4402.90.1000 (coconut shell charcoal) as the surrogate value for the respondents' coal-based carbonized materials. As Carbon Activated demonstrated in its opening brief, Commerce's decision was unreasonable, not supported by substantial evidence, and otherwise not in accordance with law, and the CIT erred when it affirmed Commerce's unreasonable determination. Defendant-Appellees' efforts to defend Commerce's determination and the CIT's decision are without merit. Thus, the Court should reverse the CIT's decision and remand this case back to Commerce for reconsideration.

**A.    Defendant-Appellees do not contest that Commerce based its determination on an incorrect finding**

Carbon Activated demonstrated in its opening brief that Commerce premised its decision to select HTS 4402.90.1000 as the surrogate value for the respondents' carbonized materials on Commerce's incorrect finding that there was "a long, demonstrable history in this proceeding of using coconut-shell carbmat in the production of the subject merchandise, unlike wood carbmat, which has never been used to produce the subject merchandise." CAC Br. 16-17. Carbon Activated also demonstrated that this incorrect finding was the principal basis that the CIT cited in affirming Commerce's determination. *Id.* Both of these facts speak for themselves, and Defendant-Appellees do not contest them in their briefs.

Instead, Defendant-Appellees try to change the subject. *First*, the government asserts that "{r}egardless of whether the respondents in the previous reviews reported using coal-based carbonized materials, in those reviews, like here, Commerce selected coconut shell charcoal as the appropriate surrogate value." U.S. Br. 19-20. In other words, it should not matter that Commerce based its decision on an incorrect finding. But the government is wrong. In *Carbon Activated I*, the CIT ruled that "{a}bsent evidence that Respondents used coconut shell charcoal, Commerce's selection of {coconut shell charcoal} over {}wood charcoal is unsupported by substantial evidence and reasoned explanation." *Carbon Activated Tianjin Co. v. United States*, 586 F. Supp. 3d 1360, 1379 (CIT

2022) ("*Carbon Activated I*"); Appx35.  In its Draft Remand Redetermination,

Commerce correctly found that that the record contained no such evidence.

Appx4899-4901.  Therefore, in accordance with the CIT's decision in *Carbon*

*Activated I*, Commerce's only reasonable choice was to select the basket category

HTS 4402.90 as the surrogate value for respondents' carbonized materials.  And

indeed, that is exactly what Commerce did in its Draft Remand Redetermination,

*see* Appx4899-4901, before it reversed itself in the Final Remand Redetermination

on the basis of its incorrect finding about the respondents' alleged "long,

demonstrable history."  Appx4800.

*Second*, the government asserts that Carbon Activated "erroneously"

contends that Commerce's incorrect finding was one of the principal bases that

Commerce relied upon for purposes of its determination, and the principal basis

that the CIT relied upon in affirming Commerce's determination.  U.S. Br. 21.

This argument falls flat; while the government claims that Commerce "also" relied

on two "additional" bases for its surrogate value determination, *see id.*, neither is

well-founded.  *See* CAC Br. 17-18 (explaining that Commerce's statement that it

"has consistently selected the more specific subheading category … to value the

mandatory respondents' carbmat in this proceeding" mischaracterized Commerce's

past practice); *id*. at 24-29 (explaining why Commerce erred in relying on alleged

differences in the activation processes of wood-based charcoal and coal-based

carbonized material).  Moreover, even if the "additional" bases were well-founded, this would not change the fact that Commerce's incorrect finding was, indeed, a principal basis for its decision (as Carbon Activated correctly noted), nor that it was *the* dispositive factor in the CIT's decision to affirm Commerce's Final Remand Redetermination (as the Defendant-Appellees effectively concede).[1]

For its part, Calgon argues that Commerce's incorrect finding was "a syntax error" and that Commerce intended to state that there was a long history of Commerce relying on coconut-shell as the surrogate value for carbonized material. Calgon Br. 22-25.  It should go without saying that the Court must base its review on what Commerce actually said, not on what Calgon wishes it had said.[2]  *See U.H.F.C. Co. v. United States*, 916 F.2d 689, 700 (Fed. Cir. 1990) ("Post-hoc rationalizations of agency actions first advocated by counsel in court may not serve as the basis for sustaining the agency's determination."); *SKF USA Inc. v. United*

---

[1] While the government and Calgon both try to defend Commerce's determination (albeit on different grounds), neither tries to rebut Carbon Activated's showing that Commerce's incorrect finding was the dispositive factor in the CIT's decision. The fact that the CIT affirmed Commerce on the basis of an incorrect finding is sufficient on its own to mandate a remand.

[2] Calgon also mischaracterizes the surrogate values that Commerce was choosing between.  According to Calgon, the choices were "coconut-shell based charcoal versus wood-based charcoal."  Calgon Br. 24.  But in reality, Commerce was choosing between a basket HTS heading that covered both coconut shell charcoal and other wood charcoal (4402.90) and an alternative HTS subheading limited to coconut shell charcoal (4402.90.1000).

*States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) ("{C}ourts may not accept appellate counsel's post hoc rationalizations for agency action.") (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))); *Altcor, Inc. v. United States*, 658 F. Supp. 295, 300 (CIT 1987) ("The Court must rely upon the rationale articulated by the agency. It may not rely upon post-hoc rationalizations."). But in any event, Commerce's reliance on its choice of surrogate values in past reviews was unsupported by substantial evidence and contrary to law, as Carbon Activated discusses in the next section.

### B. Commerce's reliance on its choice of surrogate values in past administrative reviews was unsupported by substantial evidence and contrary to law

The Defendant-Appellees argue that even if Commerce's finding about respondents' alleged use of coconut shell carbmat was incorrect, it was reasonable for Commerce to consider its "history" of using coconut shell charcoal as a surrogate value for the respondents' coal-based carbon materials. U.S. Br. 17, 19-26; Calgon Br. 26-33. The Defendant-Appellees are wrong.

As an initial matter, the government argues that Carbon Activated "failed to demonstrate that Commerce's consideration of previous reviews was unlawful given the lack of evidence on the record indicating that the mandatory respondents purchased or used coconut shell charcoal or wood based carbonized materials in the production of activated carbon." U.S. Br. 22. The government is trying to turn

the issue on its head.  Contrary to the government's assertion, there *was* evidence

on the record addressing this issue—namely, the evidence demonstrating that

respondents did not purchase or use either one.  Appx4899-4901.  In light of this

uncontested record evidence, Commerce should have selected the basket category

HTS 4402.90 as the surrogate value for respondents' carbonized materials,

consistent with the CIT's opinion in *Carbon Activated I*.

Similarly, the government asserts that Commerce is permitted to act in

accordance with prior reviews "when the record of the present review does not

contain new or additional facts warranting a departure from the agency's prior

practice."  U.S. Br. 22-23; *id*. at 24.  But the record of the present review did

contain such facts.  As Carbon Activated explained in its opening brief, AR12 is

the first review to involve a choice between a surrogate value based on a basket

HTS heading that covered both coconut shell charcoal and other wood charcoal

(4402.90) and an alternative surrogate value based on a more specific HTS

subheading limited to coconut shell charcoal (4402.90.1000).  *See* CAC Br. 17-18.

Commerce was not presented with these alternative options in prior reviews.  In

addition, the record for AR12 includes evidence demonstrating that the

respondents in this review did not purchase or use coconut shell charcoal *or* wood

based carbonized materials in the production of activated carbon, unlike the

respondents in prior reviews.  Commerce cited these facts in deciding to select

HTS 4402.90 as the surrogate value in its Draft Remand Redetermination, and it should have done the same in the Final Remand Redetermination.

Defendant-Appellees also argue that Commerce's selection of HTS 4402.90.1000 (*i.e.*, coconut shell charcoal) is consistent with Commerce's past practice and that it was reasonable for Commerce to have relied on that practice. *See* U.S. Br. 10, 23; Calgon Br. 26. To the contrary, Commerce's past practice was not a reasonable basis for Commerce to select HTS 4402.90.1000 as the surrogate value in AR12, because the facts on the record of AR12 are different from those in the past reviews (as discussed above).[3] *See Qingdao Sea-Line Trading Co., Ltd. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("{E}ach administrative review is a separate exercise of Commerce's authority that allows

---

[3] The government also argues that respondents reported using coconut shell carbonized materials in prior reviews. U.S. Br. 20-21 (citing *Certain Activated Carbon From the People's Republic of China*, 74 Fed. Reg. 51,257 (Dep't Commerce Dec. 17, 2009), and accompanying Issues and Decision Memorandum at Comment 3(e) (for the Court's attention, the correct citation is *Certain Activated Carbon From the People's Republic of China: Amended Final Results of Antidumping Administrative Review*, 74 Fed. Reg. 66,952 (Dep't Commerce Dec. 17, 2009); *Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2010-2011; Final Results of Antidumping Duty Administrative Review*, 77 Fed. Reg. 67,337 (Dep't Commerce Nov. 9, 2012), and accompanying Issues and Decision Memorandum). This too is irrelevant, because the record in this review firmly establishes that respondents did *not* use or purchase coconut shell for the production of subject merchandise. Appx4899-4901; Appx4799-4800. Moreover, the prior reviews that the government cites involved different mandatory respondents.

for different conclusions based on different facts in the record."); *Taian Ziyang Food Co. v. United States*, 783 F. Supp. 2d 1292, 1331 (CIT 2011) ("Commerce cannot select a surrogate value by default"). This is not an argument that Commerce "misunderstand{s} its own precedent", as Calgon contends. Calgon Br. 26.

In any event, Commerce mischaracterized its past practice in its Final Remand Redetermination, and the Defendant-Appellees' efforts to defend Commerce's mischaracterizations lack merit. For example, Carbon Activated demonstrated in its opening brief that Commerce's statement that it "has consistently selected the more specific subheading category (*i.e.*, coconut shell charcoal) to value the mandatory respondents' carbmat in this proceeding" was incorrect, because AR12 was the first review that involved a choice between a basket HTS heading that covered both coconut shell charcoal and other wood charcoal (4402.90) and a more specific HTS subheading limited to coconut shell charcoal (4402.90.1000). CAC Br. 17-18. The government responds that Commerce "was merely conveying that it has consistently selected coconut shell charcoal to value carbonized materials—*not* that it has consistently selected coconut shell charcoal when faced with the same options as in this administrative

review." U.S. Br. 23. But this is not what Commerce said. Like Calgon, the

government is trying to rewrite Commerce's determination.[4]

In addition, the government asserts that "a more specific classification

category is preferred if the record allows for it." U.S. Br. 23. However, the case

that it cites in support of its argument—*SolarWorld Americas, Inc. v. United*

*States*, 962 F.3d 1351, 1360 (Fed. Cir. 2020) ("*SolarWorld*") —is inapposite to the

facts of this case. In *SolarWorld*, the Federal Circuit upheld Commerce's selection

of a specific HTS subheading because SolarWorld failed to "show error" and its

proposed subheading was "not specific to the material" used by respondents.

*SolarWorld*, 962 F.3d at 1360-1361. Here, by contrast, Commerce's selection of

HTS 4902.90.1000 (*i.e.*, coconut-shell charcoal) and the CIT's decision to affirm

Commerce's determination were based on an inaccurate finding and a

mischaracterization of the history of the order. Thus, unlike in *SolarWorld*, in

---

[4] Commerce and the government both imply that Commerce has used the same HTS subheading for coconut shell charcoal in each of the prior reviews. *See* Appx4802 ("Absent new facts … it is reasonable for Commerce to continue to use the same HS subheading (*i.e.*, "coconut-shell charcoal") to value carbmat from review to review … ."); U.S. Br. 24 ("Here, Commerce has consistently selected the more specific subheading category of coconut shell charcoal to value the mandatory respondents' coal-based carbonized materials"). In reality, Commerce has not used the same HTS subheading in each of the prior reviews. In AR5, Commerce's choices were information from an industry trade publication and import data for HTS heading 4402, and Commerce selected the industry trade publication as the source of the surrogate values. *See* CAC Br. 18, n.1 (citations omitted).

AR12 Carbon Activated has "show{n} error."  Moreover, the alternative heading that Carbon Activated proposed, HTS 4902.90, is a basket category that encompasses both coconut shell charcoal and other wood charcoal, which Commerce itself has recognized.  *See Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2010-2011; Final Results of Antidumping Duty Administrative Review,* 77 Fed. Reg. 67,337 (Dep't Commerce Nov. 9, 2012), and accompanying Issues and Decision Memorandum ("AR4 Final IDM") at 17 (Commerce selected data based on a basket wood charcoal subheading over *Cococommunity* data, noting "while this HTS heading is a basket category, we note that *any imports of coconut shell and other carbonized material would be included therein*.") (emphasis supplied).

Finally, Defendant-Appellees argue that Carbon Activated should have provided additional evidence on the record to demonstrate that the basket category was the correct choice of surrogate.  U.S. Br. 18, 25; Calgon Br. 30-31.  Once again, they are trying to turn the issue on its head.  As Commerce correctly found in its Draft Remand Redetermination, the record contained no evidence that the respondents had purchased or used coconut shell charcoal *or* wood charcoal to produce subject merchandise exported to the United States.  In addition, there was no information on the record demonstrating whether the subject merchandise produced by the mandatory respondents shared more similarities with coconut

shell charcoal or wood-based charcoal, and the record did not demonstrate that

coconut shell activated carbon or wood activated charcoal was more comparable

over the other to coal-based activated carbon.  Appx4901.  In light of this

uncontested record evidence, it was unreasonable for Commerce to select HTS

4402.90.1000 (coconut shell charcoal) over HTS 4402.90 (the basket category that

covered both coconut shell charcoal and other wood charcoal), as the CIT correctly

found in *Carbon Activated I.*

> **C.    Defendant-Appellees fail to rebut that Commerce's reliance on
> the activation process used to produce activated carbon was
> unsupported by substantial evidence**

The Defendant-Appellees argue that Commerce did not unlawfully ignore

record evidence in its reliance on a statement in an ITC Report regarding the

activation processes used to make activated charcoal.  Calgon Br. 33-36; U.S. Br.

29-31.  The statement in question is contained in a footnote in one of the ITC

Reports on the record that reads as follows:  "Because chemically activated carbon

is generally made using wood, it has lower hardness than certain activated carbon

made from coal. Chemically activated carbons are generally powdered or

pelletized due to their lower hardness."  Appx3268.

The government first argues that Carbon Activated "misunderstands

Commerce's reliance on the activation process."  U.S. Br. 27.  The government

repeats Commerce's reasoning that there was no record evidence regarding the

physical or chemical properties of coal-based charcoal, coconut shell charcoal, and wood-based charcoal, but there was evidence that the respondents use a steam-activated process to produce their activated carbon. *Id.* The government then makes the same flawed leap of logic from the ITC's statement that chemically-activated carbon is generally made using wood to the conclusion that HTS 4402.90, the basket category that includes wood-based charcoal, is not an appropriate surrogate value for the carbonized material used in the respondents' steam-activated process. *Id.* at 27-28. But this is a *non sequitur*. As the CIT correctly recognized, the ITC's statement does not support Commerce's conclusion that steam activated carbon is not or cannot be produced with wood-based charcoal. Appx56.

The government takes issue with Carbon Activated's description of the CIT holding Commerce's reasoning to be "unfounded." U.S. Br. 28. But the government merely points to the exact same sentence from the CIT's decision, where the trial court plainly disagreed with Commerce's finding. Thus, the government fails to rebut Carbon Activated's argument that Commerce's analysis is founded on an erroneous inference that steam activated carbon cannot be made using wood charcoal. Moreover, the remainder of the CIT's decision is grounded on an incorrect finding made by Commerce, as described above in Section I.A.

The government argues further that there is no evidence that wood charcoal has been used to produce subject merchandise throughout the long history of this antidumping duty order, citing Commerce's decision.  U.S. Br. 29.  However, this is not what Commerce found, and it is factually incorrect.  *See* Appx4798-4803; Appx4807-4810.

The government also asserts that the fact that a potential surrogate value can be used to make subject merchandise does not obligate Commerce to select it. U.S. Br. 29.  Carbon Activated has not taken the position that Commerce was obligated as a matter of law to select HTS 4402.90 as the surrogate value merely because wood-based charcoal can be used to make activated carbon.  Rather, Carbon Activated demonstrated in its opening brief that Commerce's decision to reject HTS 4402.90 is unsupported by substantial evidence because the respondents in this review did not purchase or use coconut-based charcoal to make subject merchandise and the more inclusive category, HTS 4402.90, better represents the coal-based carbonized material that they did use.  Defendant-Appellants fail to rebut this showing.

The government next seeks to refute Carbon Activated's argument that Commerce unlawfully ignored the parts of the ITC Reports that detract from its findings—arguing that Carbon Activated failed to show how this information supports a determination that Commerce was obligated to use the basket category

that covers wood-based charcoal—but this rejoinder falls flat. Carbon Activated explained in its opening brief why the information contained in the ITC Reports regarding differences in the physical characteristics and end-uses of coconut shell and coal-based carbonized materials detracts from Commerce's conclusion that the surrogate value for coconut shell charcoal was the best available information on the record to value the respondents' coal-based carbonized materials. CAC Br. 26-27. The government is also incorrect that Commerce rejected Carbon Activated's arguments regarding differing end-uses of coconut-shell and coal-based carbonized materials. In fact, Commerce did not address these arguments in its decision, which is a further reason why Commerce's decision is unsupported by substantial evidence. Appx4797-4803; Appx4807-4810.

The government also disputes Carbon Activated's explanation of the lack of relevance of the prior reviews and court cases cited by Commerce in its decision. The government asserts that Commerce did not rely on these cases because they involved a party advocating for a wood-based charcoal surrogate value, but rather to support its finding "that coconut shell carbmat shares many similarities with coal-based carbmat and is an appropriate surrogate for coal-based carbmat." U.S. Br. 32. The government's argument completely misses the point. In each of the reviews cited by Commerce, a respondent, Jacobi Carbons AB ("Jacobi"), argued in favor of coconut-based charcoal as the surrogate value for its carbonized

materials and presented evidence that the alternatives—either wood-based charcoal or cokes of coal—could not be used in the production of its subject merchandise. *See Certain Activated Carbon From the People's Republic of China: Final Results and Partial Rescission of Third Antidumping Administrative Review*, 76 Fed. Reg. 67,142 (Dep't Commerce Oct. 31, 2011) and accompanying AR3 Final IDM at 14-15; *Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011-2012*, 78 Fed. Reg. 70,533 (Dep't Commerce Nov. 20, 2013) and accompanying AR5 Final IDM at 34-36; *Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017) and accompanying AR9 Final IDM at 24-26.  This is a different review, with different respondents and a different record.  Unlike the prior reviews cited by Commerce, there is no evidence on the record of this review that wood-based charcoal could not be used to produce the respondents' activated carbon.  Thus, both the prior reviews and the CIT cases cited by Commerce (which involved the same fact patterns) are inapposite to this case.

The government also takes issue with Carbon Activated's assertion that Commerce relied on these authorities to determine that coconut-shell charcoal shares *more* similarities with coal-based carbmat than wood-based charcoal—stating that what Commerce actually found was "that coconut shell carbmat shares

*many* similarities with coal-based carbmat" —but this is a distinction without a difference. The record does not support Commerce's finding of "many" similarities, as the ITC Reports that Commerce erroneously disregarded illustrate.

Finally, the government argues that "Commerce reasonably exercised its discretion and expertise in selecting Malaysian imports under HTS 4402.90.1000 (coconut-shell charcoal)" because "the record establishes that wood charcoal generally undergoes a chemical activation process that is distinct from the steam or thermal activation of the coal-based carbonized materials used by the mandatory respondents." U.S. Br. 34. This is a blatant mischaracterization of the record evidence. The ITC's footnote on activation processes states that chemically-activated carbon is "generally made using wood charcoal"; *see* Appx3268, the ITC did *not* state that wood charcoal "generally undergoes a chemical activation process," *see id.*, and there is no record evidence on the record of this review that wood charcoal could not be used in the respondents' steam activation process.

Notably, in AR4, respondent Jacobi argued that the scope of the order excludes chemically activated carbon produced using wood and, therefore, Commerce should not use the basket HTS code 4402.90 because it consists of wood charcoal which cannot be used to make subject merchandise. Calgon—also the petitioners in AR4—responded that the record evidence did "not support Jacobi's implicit argument that wood charcoal cannot be used to produce subject

merchandise," and argued that the Thai basket heading 4402.90 ("Wood

Charcoal") was appropriate to value carbonized materials because the scope of the

order recognizes wood and coconut shells as feedstock in the production of subject

merchandise.[56]  *See* Petitioners' Letter, "Certain Activated Carbon from the

People's Republic of China—Petitioners Resubmission of Redacted Rebuttal

Brief," dated Oct. 9, 2012 at 21.  Commerce agreed with Petitioners and

determined that import data based on the basket category HTS 4402.90 was

appropriate to value coal-based carbonized materials.

The government argues that Carbon Activated cannot raise the "'wood

feedstock' issue" on appeal because it did not include this argument in its

comments on the Draft Remand Redetermination or other briefings before

---

[5] Petitioners also argued that "evidence on the use of wood, and not wood charcoal, to produce chemically activated carbon is irrelevant to the use of wood feedstock for producing steam activated carbon."  *See* Petitioners' Letter, "Certain Activated Carbon from the People's Republic of China – Petitioners Resubmission of Redacted Rebuttal Brief," dated Oct. 9, 2012 at 21.

[6] Calgon argues that "Chinese respondents" previously advocated for the use of coconut-shell charcoal as the surrogate value.  Calgon Br. 14.  However, the respondents in this review—Carbon Activated Tianjin Co., Ltd. and Datong Juqiang activated Carbon Co., Ltd. —have never requested that Commerce use the coconut-shell charcoal HTS subheading to value coal-based carbonized materials.  In contrast, Calgon, as the petitioner in prior reviews, has (1) argued for the use of a basket HTS code which consists of wood charcoal to value respondents' carbonized materials; and (2) argued that record evidence on the use of wood to produce chemically activated carbon does not preclude the use of wood feedstock to produce subject merchandise, which the scope of the order specifically contemplates.

Commerce.  U.S. Br. 35-37.  However, the courts do not prevent consideration of

an argument where judicial review is the first meaningful opportunity to challenge

Commerce's decisions.  *See Valley Fresh Seafood, Inc. v. United States*, 31 CIT

1989, 1995 (2007); *ABB, Inc. v. United States*, 920 F.3d 811, 818 (Fed. Cir. 2019)

(noting that the courts "enjoy{} discretion to identify circumstances where

exhaustion of administrative remedies does not apply.").  It was reasonable that

Carbon Activated did not raise the "wood feedstock" argument in its comments on

the Draft Remand Redetermination because Commerce correctly selected the

basket category HTS 4402.90 in its draft results.  *See* Appx4898-4901.  Moreover,

Carbon Activated's "wood feedstock" argument supplements its broader point that

Commerce ignored record evidence—including the language in the scope of the

order—in selecting HTS 4402.90.1000 over HTS 4402.90.  Therefore, Carbon

Activated's argument is not new, and the administrative exhaustion doctrine is not

applicable.  *See Stupp Corporation v. United States*, 619 F. Supp. 3d 1314, 1321

(CIT 2023) ("SeAH has exhausted its exchange rate argument … these calculations

are not a new argument, but an illustration of the same scenario Commerce was

directed to explain.").

## CONCLUSION

For the foregoing reasons, Carbon Activated respectfully requests that this

Court reverse the CIT's decision in *Carbon Activated II* affirming Commerce's

surrogate value selection for carbonized materials and remand the case with

instructions requiring Commerce to reconsider its surrogate value selection.

Respectfully submitted,

/s/ David J. Ross

KANZANIRA THORINGTON
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center,
250 Greenwich Street
New York, NY 10007
(212) 230-8800

DAVID J. ROSS
STEPHANIE HARTMANN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

*Attorneys for Plaintiffs-Appellants*
*Carbon Activated Tianjin Co., Ltd.*
*and Carbon Activated Corporation*

March 4, 2024

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1.      The filing has been prepared using a proportionally-spaced typeface and includes 4,643 words.

2.      The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


/s/ David J. Ross
DAVID J. ROSS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

March 4, 2024