# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

CARBON ACTIVATED TIANJIN CO., LTD., CARBON ACTIVATED CORPORATION,

*Plaintiffs-Appellants*,

DATONG JUQIANG ACTIVATED CARBON CO., LTD., SHANXI INDUSTRY TECHNOLOGY TRADING CO., LTD., DATONG MUNICIPAL YUNGUANG ACTIVATED CARBON CO., LTD., BEIJING PACIFIC ACTIVATED CARBON PRODUCTS CO., LTD.,

*Plaintiffs*,

*v.*

UNITED STATES, CALGON CARBON CORPORATION, CABOT NORIT AMERICAS, INC.,

*Defendants-Appellees.*

On Appeal from the United States Court of International Trade,
No. 1:21-cv-00131-MAB, Chief Judge Mark A. Barnett

**PLAINTIFFS-APPELLANTS CARBON ACTIVATED TIANJIN CO., LTD. AND CARBON ACTIVATED CORPORATION'S PETITION FOR PANEL REHEARING**

DAVID J. ROSS
STEPHANIE E. HARTMANN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

*Attorneys for Plaintiffs-Appellants*
*Carbon Activated Tianjin Co., Ltd.*
*and Carbon Activated Corporation*

June 23, 2025

# CERTIFICATE OF INTEREST

Counsel for Plaintiffs-Appellants Carbon Activated Corporation and Carbon Activated Tianjin Co., Ltd. certifies the following:

**1.** **Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Carbon Activated Corporation and Carbon Activated Tianjin Co., Ltd.

**2.** **Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3.** **Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.** **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

GRUNFELD DESIDERIO LEBOWITZ SILVERMAN & KLESTADT, LLP:
Dharmendra Narain Choudhary, Jordan Charles Kahn, Brandon Michael Petelin, Francis J. Sailer, Elaine Fang Wang

**5.     Related Cases**.  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)     ☒ No     ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  Please do not duplicate information.  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6.     Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

None.

Dated:  June 23, 2025

/s/ David J. Ross
DAVID J. ROSS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...................................................................................i

TABLE OF AUTHORITIES ......................................................................................iv

POINTS OVERLOOKED OR MISAPPREHENDED BY THE
     PANEL..................................................................................................................1

ARGUMENT .............................................................................................................1

CONCLUSION ...........................................................................................................7

ADDENDUM

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Jiaxing Brother Fastener Co. v. United States*,
  822 F.3d 1289 (Fed. Cir. 2016) ...........................................................................3

*NTN Bearing Corp. of America v. United States*,
  46 F. Supp. 3d 1375 (Ct. Int'l Trade 2015) .......................................................2

*Qingdao Sea-Line Trading Co., Ltd. v. United States*,
  766 F.3d 1378 (Fed. Cir. 2014) ...........................................................................3

## ADMINISTRATIVE DECISIONS

*Certain Activated Carbon From the People's Republic of China:*
  *Final Results of Antidumping Duty Administrative Review; 2011-*
  *2012*, 78 Fed. Reg. 70,533 (Dep't Commerce Nov. 26, 2013) ...................4, 5, 6

*Certain Activated Carbon From the People's Republic of China:*
  *Final Results of Antidumping Duty Administrative Review; 2014-*
  *2015*, 81 Fed. Reg. 62,088 (Dep't Commerce Sept. 8, 2016) .............................5

*Certain Activated Carbon From the People's Republic of China:*
  *Final Results of Antidumping Duty Administrative Review; 2015-*
  *2016*, 82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017) ..........................6, 7

**POINTS OVERLOOKED OR MISAPPREHENDED BY THE PANEL**

It was legal error for the panel to affirm Commerce's selection of the surrogate value for carbonized material as supported by substantial evidence based on Commerce determinations in prior administrative reviews. The panel also erred in misapprehending key distinctions between the administrative record of this review, AR12, and the records of the prior reviews. It was legal error for the panel to conclude that Commerce may resort to its methodology from these prior administrative reviews given the differences in evidentiary records.

**ARGUMENT**

In this appeal, the panel declined to address the significance of the fact that Commerce premised its decision to select HTS 4402.90.1000 as the surrogate value for the respondents' carbonized materials on its incorrect finding that there was a "long, demonstrable history in this proceeding of using coconut-shell carbmat in the production of the subject merchandise, unlike wood carbmat, which has never been used to produce the subject merchandise", CAC Br. 16-17, or that this incorrect finding was the principal basis that the Trade Court relied upon in affirming Commerce's determination. *Id.* Instead, the panel asserted that "even if we agree with Carbon Activated that the {finding} is incorrect, the result is not changed. What is critical is the statement in the first sentence of the paragraph that, in the past, 'Commerce found coconut shell charcoal to be the best available

information with which to value mandatory respondents' coal-based {carbonized material} based on the reported product specifications.'" This was erroneous on at least two grounds.

*First*, the panel cited excerpts from Commerce's determinations in AR3, AR5, and AR9 in support of its finding that this statement by Commerce was supported by substantial evidence. As an initial matter, prior determinations by Commerce are not factual evidence, and the record evidence Commerce relied upon in reaching those determinations is not relevant to the respondents in AR12 and not on the record of AR12. Moreover, Commerce itself did not cite its final determinations in AR3 or AR9 in support of its statement. *See* Commerce's determination, n. 22.[1] Thus, contrary to the panel's finding, these determinations do not constitute substantial evidence supporting Commerce's statement.[2] *See* *NTN Bearing Corp. of Am. v. United States*, 46 F. Supp. 3d 1375, 1387 (Ct. Int'l Trade 2015) ("The court must review {Commerce's} determination according to

---

[1] The source of these excerpts appears to be the Government's case brief. *See* USG Br. 20. However, the Government's citation of Commerce's determinations in AR3 and AR9 was a *post hoc* rationalization.

[2] Commerce did cite AR3, AR5, and AR9 in support of the second statement in the same paragraph, that there is a "long, demonstrable history in this proceeding of using coconut-shell carbmat in the production of the subject merchandise, unlike wood carbmat, which has never been used to produce the subject merchandise." However, this statement is false, and it was legal error for the Trade Court to rely on it. CAC Br. 16-17.

the reasoning Commerce provided at the time it announced its decision, which is contained in the Decision Memorandum for the Final Results …").

*Second*, the panel's reliance on Commerce's determination in AR5 was also erroneous, because the panel overlooked or misapprehended significant differences between the facts on the record of AR5 and the facts on the record of the review at issue in this case (AR12).

In affirming the Trade Court's decision sustaining the final results, the panel cited its prior holding in *Qingdao Sea-Line Trading Co.* that Commerce has "broad discretion to determine what constitutes the best available information" and that Commerce "may properly resort to its methodology from prior administrative reviews." *See Qingdao Sea-Line Trading Co., Ltd. v. United States*, 766 F.3d 1378, 1386-87 (Fed. Cir. 2014). However, the panel overlooked that this Court has also held that "[e]ach administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." *Id*. at 1387; *see also Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2016) ("Commerce is required to base surrogate country selection on the facts presented in each case, and not on grounds of perceived tradition."). A methodology that was reasonable in a prior review, based on the record of that review, may be unsupported in a later review with different facts.

In *Carbon Activated I*, the Trade Court stated that Commerce's reliance on its findings in AR5 to justify its choice of surrogate value was unavailing because "AR5 involved a specific type of activated carbon that could not have been produced using wood charcoal. Commerce has not established or indicated that such is the case in the present review." Appx35 (internal citation omitted).[3] The Trade Court remanded the issue for further explanation or reconsideration. Appx36. In its draft remand redetermination, Commerce noted that this Court has recognized that wood charcoal *can* be used to produce the subject merchandise. Appx4901. Therefore, the factual predicate that Commerce relied upon to justify the methodology it used in AR5 is absent here.

The review at issue in this case, AR12, involved different respondents and different record evidence than AR5. The respondents in AR12 reported using only coal-based carbonized materials to produce the subject merchandise. *See* Appx4766; Appx1143. As the panel noted, the record of AR12 contains no direct evidence of whether the AR12 respondents' coal-based carbonized materials

_____

[3] The potential choices of surrogates on the record of AR5 were import data for HTS heading 4402, "Wood Charcoal (Including Shell or Nut Charcoal), Whether Or Not Agglomerated", and coconut shell charcoal prices from a coconut industry trade publication. *See* AR5 Final IDM at 34, 36. The respondent in AR5 – Jacobi Carbons, which was *not* a respondent in AR12 – submitted an expert report showing that its activated carbon had certain specifications that *could not* be produced from wood-based charcoal, and that the subject merchandise it sold in the U.S. market during the POR met those specifications. *See id*. at 34, 36.

shared more similarities with coconut shell charcoal or wood-based charcoal. Appx4800 (citing Appx3277-3278). Crucially, there was no evidence on the record that the AR12 respondents' activated carbon *could not* be produced from wood-based charcoal based on specifications. Because the panel overlooked or misapprehended these significant facts, panel rehearing is warranted.

The petitioner Calgon has argued in prior reviews, including AR5 and AR8: (1) that surrogate values that consist of wood-based charcoal are the best available information to value carbonized material; and (2) that record evidence on the use of wood to produce chemically activated carbon does not preclude the use of wood feedstock to produce steam-activated carbon, which the scope specifically contemplates. *See Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 81 Fed. Reg. 62,088 (Dep't Commerce Sept. 8, 2016), Issues and Decision Mem., cmt. 5; *Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011-2012*, 78 Fed. Reg. 70,533 (Dep't Commerce Nov. 26, 2013), Issues and Decision Mem. ("AR5 IDM"), cmt. 6.

Commerce recognized in AR5 that the subject merchandise "may be manufactured from wood or nut charcoal, in addition to coal." AR5 IDM, cmt. 6. Commerce only rejected the surrogate values covering wood-based charcoal

- 5 -

because one respondent, Jacobi Carbons, provided certifications from industry experts proving that the product specifications of its activated carbon *could not* be produced from wood charcoal. *See id.* Commerce's finding that "coconut shell charcoal {is} the best available information with which to value mandatory respondents' coal-based {carbonized material} based on the reported product specifications" was premised on the unique facts on the record of that review. The panel overlooked this in affirming Commerce's decision to resort to the methodology used in prior administrative reviews. As the Trade Court held, "Absent evidence that Respondents used coconut shell charcoal, Commerce's selection of one subheading (coconut shell charcoal) over another (other wood charcoal) is unsupported by substantial evidence and reasoned explanation." Appx35.

Finally, in citing Commerce's final determination in AR9 for the proposition that the respondents had argued against using a surrogate value for wood-based charcoal, the panel overlooked that the wood-based charcoal at issue in AR9 was not a type used to produce subject merchandise. *See Certain Activated Carbon From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2015–2016*, 82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017), Issues and Decision Mem., cmt. 5. In AR9, Commerce used Thai import data under the HS code covering coconut shell charcoal (HS 4402.90.1000). *See*

*id.* Respondents in that review argued that Commerce should exclude Thai imports from France, because it consisted of wood-based charcoal that was far more expensive and used in animal feed, not in production of activated carbon. *Id.* Similar to AR5, respondents' arguments against using wood-based charcoal as a surrogate for carbonized material in AR9 pertained to unique facts not on the record and not relevant in AR12. The panel overlooked this distinction.

## CONCLUSION

The panel erred in affirming Commerce's selection of the surrogate value for carbonized material. Panel rehearing should be granted and the case remanded to Commerce to reconsider its surrogate value selection.

Respectfully submitted,

/s/ David J. Ross
DAVID J. ROSS
STEPHANIE HARTMANN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

*Attorneys for Plaintiffs-Appellants*
*Carbon Activated Tianjin Co., Ltd.*
*and Carbon Activated Corporation*

June 23, 2025

# ADDENDUM

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————

**CARBON ACTIVATED TIANJIN CO., LTD.,
CARBON ACTIVATED CORPORATION,**
*Plaintiffs-Appellants*

**DATONG JUQIANG ACTIVATED CARBON CO.,
LTD., SHANXI INDUSTRY TECHNOLOGY
TRADING CO., LTD., DATONG MUNICIPAL
YUNGUANG ACTIVATED CARBON CO., LTD.,
BEIJING PACIFIC ACTIVATED CARBON
PRODUCTS CO., LTD.,**
*Plaintiffs*

v.

**UNITED STATES, CALGON CARBON
CORPORATION, CABOT NORIT AMERICAS, INC.,**
*Defendants-Appellees*

———————————

2023-2135

———————————

Appeal from the United States Court of International Trade in No. 1:21-cv-00131-MAB, Chief Judge Mark A. Barnett.

———————————

Decided: May 9, 2025

———————————

STEPHANIE HARTMANN, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by DAVID J. ROSS.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY, ANTONIA RAMOS SOARES; ASHLANDE GELIN, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

MELISSA M. BREWER, Kelley Drye & Warren, LLP, Washington, DC, argued for defendants-appellees Calgon Carbon Corporation, Cabot Norit Americas, Inc. Also represented by JOHN M. HERRMANN, ROBERT ALAN LUBERDA.

———————————

Before TARANTO, SCHALL, and CHEN, *Circuit Judges*.

SCHALL, *Circuit Judge*.

Carbon Activated Tianjin Co., Ltd. and Carbon Activated Corporation (collectively, "Carbon Activated") are companies that export activated carbon to the United States from the People's Republic of China ("China").[1] Activated carbon is a solid carbon adsorbent material that is used to remove pollutants in gas and liquids. *See* App. 3261–76.[2]

———————————

[1]    Specifically, Carbon Activated Tianjin Co., Ltd. exports activated carbon from China to the United States, where it is resold by Carbon Activated Corporation.

[2]    Our citation to "App." refers to the Appendix filed by the parties, ECF Nos. 27, 31.

Carbon Activated now appeals the decision of the United States Court of International Trade ("Trade Court") in *Carbon Activated Tianjin Co., Ltd. v. United States*, 633 F. Supp. 3d 1329 (Ct. Int'l Trade 2023) ("*Carbon Activated*"). In that decision, the Trade Court sustained the final results of the Department of Commerce ("Commerce" or "the agency") in the twelfth administrative review ("AR12") of the antidumping duty order on certain activated carbon from China for the period April 1, 2018, through March 31, 2019, as modified by Commerce's redetermination upon remand from the court. *See Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Rescission of Administrative Review, in Part; 2018–2019*, 86 Fed. Reg. 10,539 (Dep't Commerce Feb. 22, 2021) ("*Final Results*"), App. 1066–69; *Final Results of Redetermination Pursuant to Court Remand* (Nov. 17, 2022) ("*Remand Determination*"), App. 4796–824. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). For the reasons set forth below, we *affirm*.

I

The Tariff Act of 1930, as amended, directs Commerce to impose an antidumping duty on foreign merchandise if the "merchandise is being, or is likely to be, sold in the United States at less than its fair value." 19 U.S.C. § 1673(1). The antidumping duty reflects the amount by which the normal value (the price a producer charges in its home market) exceeds the export price (the price of the product in the United States). *Id.* § 1673; *see U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010) (citation omitted). However, in an antidumping duty proceeding involving a non-market economy country, such as China, Commerce calculates normal value "on the basis of the value of the factors of production utilized in producing the merchandise." 19 U.S.C. § 1677b(c)(1). The statute directs Commerce to value the factors of production "based

on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by" Commerce. *Id.* The factors of production that Commerce must value include, but are not limited to, "hours of labor required," "quantities of raw materials employed," "amounts of energy and other utilities consumed," and "representative capital cost, including depreciation." *Id.* § 1677b(c)(3). The resulting values are commonly referred to as "surrogate values," and the market economy country from which the surrogate values are derived is commonly referred to as the "surrogate country." *See Risen Energy Co., Ltd. v. United States*, 122 F.4th 1348, 1352 (Fed. Cir. 2024) ("By identifying a surrogate country and surrogate values for the factors of production, Commerce approximates what a non-market economy manufacturer might pay in a market economy setting." (internal quotation marks and citation omitted)). It is Commerce's preference to use a "primary" surrogate country as the reference point when there are several countries that are at a level of economic development comparable to the nonmarket economy country and that are significant producers of comparable merchandise. *Jiaxing Bro. Fastener Co., Ltd. v. United States*, 822 F.3d 1289, 1294 (Fed. Cir. 2016) (citing 19 C.F.R. § 351.408(c)(2)).

## II

This case presents a single issue: Commerce's selection of a surrogate value in AR12 for coal-based carbonized material, one of the factors of production in the manufacture of activated carbon. Since, as noted, China is a non-market economy country, in the *Remand Determination*, Commerce turned to the selection of a surrogate value for carbonized material in Malaysia, which Commerce had previously selected as the primary surrogate country. App. 4798, 4540–47. In that setting, Commerce determined that Malaysian import data under Harmonized System ("HS") subheading 4402.90.1000 ("coconut shell charcoal") provided the best available information for a surrogate value

for coal-based carbonized material. App. 4798. In so doing, Commerce rejected Carbon Activated's claim that the surrogate value for carbonized material should be determined based upon Malaysian import data under HS 4402.90, which covers "wood charcoal (including shell or nut charcoal), excluding that of bamboo." App. 4797–800.

In the *Remand Determination*, Commerce explained that the record did not indicate whether Carbon Activated purchased or used wood or coconut shell charcoal, however, Commerce noted its past practice of relying on coconut shell charcoal as the surrogate value for coal-based carbonized material. App. 4799–800. In addition, Commerce pointed to an International Trade Commission ("ITC") report that was placed on the record by Carbon Activated. The report stated that the physical properties of activated carbon "depend on the raw materials used, as well as the activation process." App. 4801 (quoting App. 3267). Continuing, Commerce reasoned that, "[b]ecause the physical properties of activated carbon depend not only on the input materials used, but also the activation process," it was reasonable to consider the activation process in making its surrogate value determination. *Id.* Noting the statement in the ITC report that "chemically activated carbon is generally made using wood," App. 3268 n.33, and the fact that Carbon Activated reported only using steam activation during the period of review, Commerce found that HS 4402.90, which includes wood-based activated carbon, did not provide the best information to value Carbon Activated's carbonized material. App. 4801–02. Finally, Commerce pointed out that it had "consistently selected the more specific subheading category (*i.e.*, coconut shell charcoal)" to value Carbon Activated's carbonized material in the antidumping proceeding involving activated carbon from China. App. 4802. Commerce concluded:

> Therefore, because the record indicates that wood charcoal generally undergoes an activation process (chemical) that is distinct from that of the coal-

based [carbonized material] used by [Carbon Activated] (steam/thermal), we find it is appropriate to use Malaysian imports under HS 4402.90.1000 ("coconut-shell charcoal") to value coal-based [carbonized material] used to produce the subject merchandise.

App. 4802–03.

Reviewing the *Final Results*, as modified by the *Remand Determination*, the Trade Court concluded that Commerce had supported its surrogate value selection for carbonized material "with substantial evidence such that a reasonable mind could find that the agency selected the best information available." *Carbon Activated*, 633 F. Supp. 3d at 1336. It therefore sustained the *Final Results*. *Id.* at 1340.

## III

We review decisions of the Trade Court concerning Commerce's antidumping determinations by applying the same standard of review used by the Trade Court. *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1377 (Fed. Cir. 2013). "Commerce's determination will be sustained unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Id.* (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

## IV

On appeal, Carbon Activated argues that Commerce's selection of Malaysian import data under HS 4402.90.1000 (coconut shell charcoal) as the surrogate value for its carbonized material is not supported by substantial evidence and is contrary to law. According to Carbon Activated, in its *Remand Determination*, Commerce based its decision to select HS 4402.90.1000 over the broader heading, HS

4402.90, on inaccurate and unsupported factual findings, and it was reversible error for the Trade Court to rely on those findings to affirm the *Remand Determination*. Appellants' Br. 12.

As noted, in the *Remand Determination*, Commerce stated that it was reasonable to consider its past practice of relying on coconut shell charcoal as the surrogate value for carbonized material. In that context, Commerce stated:

> In past Commerce decisions and on remand, because [surrogate value] information specific to coal-based [carbonized material] was not available, Commerce found coconut shell charcoal to be the best available information with which to value mandatory respondents' coal-based [carbonized material] based on the reported product specifications. There is a long, demonstrable history in this proceeding of using coconut-shell [carbonized material] in the production of the subject merchandise, unlike wood [carbonized material], which has never been used to produce the subject merchandise.

App. 4800 (footnote omitted).

Carbon Activated contends that the second sentence in the above-quoted statement is incorrect because in each of the prior administrative reviews cited in a footnote in support of the statement, the mandatory respondents reported using coal-based carbonized materials to produce the subject merchandise, not coconut shell carbonized material. Appellants' Br. 16–17.

Carbon Activated also focuses on the second reason that Commerce gave for selecting Malaysian import data under HS 4402.90.1000 instead of HS 4402.90. As noted, Commerce determined that there was a difference in the activation processes used to produce wood-based charcoal and coal-based carbonized material. In that regard,

Commerce pointed to Carbon Activated's reports that it only used steam activation and a statement in the ITC report that chemically activated carbon is "generally" made using wood. App. 3268 n.33. On this basis, Commerce concluded that Malaysia's HS 4402.90, which includes wood-based activated carbon, was not the best information to value Carbon Activated's carbonized material. App. 4801–02. Carbon Activated asserts that Commerce erroneously inferred from the ITC's statement that steam-activated carbon could not be made using wood charcoal, and that record evidence indicates that steam-activated carbon can be made using wood charcoal. Appellants' Br. 25.

## V

We are not persuaded by Carbon Activated's arguments. Turning to its first argument, even if we agree with Carbon Activated that the second sentence in the paragraph quoted above is incorrect, the result is not changed. What is critical is the statement in the first sentence of the paragraph that, in the past, "Commerce found coconut shell charcoal to be the best available information with which to value mandatory respondents' coal-based [carbonized material] based on the reported product specifications." App. 4800. This statement is supported by substantial evidence. *See Certain Activated Carbon from the People's Republic of China: Final Results and Partial Rescission of Third Antidumping Duty Administrative Review*, 76 Fed. Reg. 67,142, *Issues and Decision Mem.*, 76 ITADOC 67,142, cmt. 4.b. (Dep't Comm. Oct. 31, 2011) ("'Coconut Shell Charcoal' results in a better, input-specific price for coal-based carbonized materials."), *aff'd Albemarle Corp. v. United States*, 27 F. Supp. 3d 1336, 1352 (Ct. Int'l Trade 2014), *aff'd in part, rev'd in part on other grounds*, 821 F.3d 1345, 1359 (Fed. Cir. 2016); *Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2011–2012*, 78 Fed. Reg. 70,533, *Issues and Decision Mem.*, 78 ITADOC 70,533, cmt. 6 (Dep't Commerce Nov. 26, 2013)

("In past decisions and on remand, because [surrogate value] information specific to coal-based carbonized materials was not available, [Commerce] has found coconut shell charcoal is the best available information with which to value respondents' coal-based carbonized materials, based on the product specifications."). *Cf. Certain Activated Carbon from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2015–2016*, 82 Fed. Reg. 51,607 (Dep't Commerce Nov. 7, 2017), *Issues and Decision Mem.* 82 ITADOC 51,607, cmt. 5 (mandatory respondents arguing against wood-based charcoal as a surrogate value). We have recognized that Commerce has "broad discretion to determine what constitutes the best available information," *Qingdao Sea-Line Trading Co., Ltd. v. United States*, 766 F.3d 1378, 1386 (Fed. Cir. 2014), and that Commerce may properly resort to its methodology from prior administrative reviews, *see id.* at 1386–87.

Second, we see no error in Commerce's reliance on evidence related to the activation process used to produce activated carbon. The administrative record contains no direct evidence that coal-based carbonized materials, coconut shell charcoal, and wood-based charcoal share similar physical or chemical properties. App. 4800 (citing App. 3277–78). Because the physical properties of activated carbon depend not only on the input materials used, but also on the activation process, Commerce reasonably relied on the activation process for steam-activated carbon in making its surrogate value selection, App. 4801–03, especially since, in this administrative review, Carbon Activated reported that it produced only steam-activated carbon. App. 4801. *See Lasko Metal Prods., Inc. v United States*, 43 F.3d 1442, 1446 (Fed. Cir. 1994) (noting that § 1677b "simply does not say—anywhere—that the factors of production must be ascertained in a single fashion").

CONCLUSION

For the foregoing reasons, we affirm the decision of the Trade Court sustaining the *Final Results*, as modified by Commerce's *Remand Determination*.[3]

**AFFIRMED**

---

[3] We have considered the additional arguments raised by Carbon Activated and have found them unpersuasive.

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 1,523 words.

2. The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ David J. Ross

DAVID J. ROSS
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

June 23, 2025